530 A.2d 445
**Ronald P. ZEIGLER**

v.

**Sallie C. ZEIGLER, Appellant.**

Superior Court of Pennsylvania.

Argued June 10, 1987.

Filed Aug. 17, 1987.

John C. Howett, Jr., Harrisburg, for appellant.

Samuel Andes, Lemoyne, for appellee.

Before CIRILLO, President Judge, and OLSZEWSKI and HESTER, JJ.

HESTER, Judge:

This is an appeal from a final decree of divorce which disposed of ancillary claims of equitable distribution, alimony, and counsel fees. The wife, appellant, challenges the economic aspects of the trial court's disposition. We hold that there was no reversible error, and affirm the orders in question.

The parties were married in 1962, had one child, now an adult, and separated in October, 1982, when appellee left the marital residence to live with his paramour. Following the institution of divorce proceedings, a hearing was held before a master who filed a report and recommendation. Both parties filed exceptions to the report. The court held an additional hearing on the valuation of the two major marital assets: husband's pension and the marital residence.

Before disposition of the exceptions to the master's report, appellant petitioned for an injunction to prevent her husband from using marital funds to purchase a house with his paramour. Without ruling on the petition, the court entered a divorce decree and equitable distribution order on August 29, 1986. In response to appellant's motion for post-trial relief, the trial court rescinded the August 29 order on September 15, 1986. Thereafter, on December 9, 1986, the court entered an order making a slight modification in the August 29 order, but otherwise reinstating it. On the same date, the court entered orders denying appellant's petition for injunctive relief and appellee's motion for post-trial relief. This timely appeal is from the orders of December 9, 1986.

Appellant raises five issues. She argues that the trial court erred in: 1) establishing a value for the marital residence higher than the evidence justified, 2) refusing to impose a constructive trust pursuant to her application for special relief, 3) allowing additional testimony following the master's hearing concerning the value of husband's pension, 4) denying appellant's motion to strike appellee's late-

filed motion for post-trial relief, and 5) denying her claim for alimony.

The first issue is whether the court erred in its valuation of the marital residence. Expert testimony at the master's hearing on October 11, 1984, established a value of $75,000 at the time of separation and $80,000 at the time of the hearing. The trial court, relying on *Sergi v. Sergi*, 351 Pa.Super. 588, 506 A.2d 928 (1986), ordered a hearing to update the valuation testimony which had been presented to the master in 1984, in order to value the property as near to the time of distribution as possible. Based on the expert testimony presented on January 15, 1986, the court used a value of $84,000 in making equitable distribution of the marital property.

Appellant objects to this value for two reasons. First she claims that the entire post-separation increase in value resulted from her efforts through physical maintenance and payment of mortgage, taxes, insurance and other expenses. She thus regards the court's use of the later value of $84,000 to be an abuse of discretion, for it gives appellee the benefit of an increase in value to which he did not contribute.

■ We do not agree with appellant's argument. *Sergi v. Sergi, id.*, 351 Pa.Superior Ct. at 593–94, 506 A.2d at 931, suggests that a later valuation date will ordinarily be most equitable in order to prevent a distribution based on stale financial data. We regard the trial court's approach to be a proper exercise of its discretion. Although appellant made the mortgage payments during the period of separation, the court's equitable distribution order requires appellee to reimburse her in the amount of $8,000 for those mortgage payments. Moreover, appellant had the benefit of exclusive occupancy of the premises during the separation.

Appellant's second objection to the value of $84,000 for the marital residence is that she intends to sell the house immediately and move to more modest quarters. She argues that the value of the residence should be reduced by expenses of sale to reflect its true value to her, for pur-

poses of equitable distribution. Moreover, she asks this court to establish a rule that, in all cases where the recipient of a marital residence intends to sell it immediately, its value for equitable distribution should be reduced by a seven percent realtor's commission and a one percent realty transfer tax.

The rationale for such a rule has been explained by the Honorable Clarence C. Morrison.

> [E]ven if neither party contemplated selling the home, the costs of sale must still be deducted. Valuation is nothing more than a function of what the home is worth if it were to be presently sold; therefore, the costs of achieving that value should be considered. Moreover, any number of events could occur that would require the home to be sold at virtually any time. Thus, the Master did not err by including costs of sale in the net equity of the marital home.

*Thrush v. Thrush*, No. 1314 S. 1981, slip opinion at 3 (Dauphin County, September 21, 1984), *aff'd per curiam* 341 Pa.Super. 628, 491 A.2d 927 (1985), petition for allowance of appeal denied (Pa. July 25, 1985).

■ We decline to adopt such a rule for all cases, or even for all cases in which an immediate sale is intended. First, such an intention is not easily susceptible of proof. More importantly, the proper amount to deduct for costs of sale would be a matter of speculation. Although it is common practice to employ the services of a realtor in selling a home, it is not uncommon for an owner to undertake a sale without the assistance of a realtor. In the latter instances, no commission is involved. Moreover, although a commission of seven percent is common, it is by no means universal. Similarly, although realty transfer taxes are routinely split equally between buyer and seller, the practice is not universal.

■ Adjustment in the value of a residence for expenses associated with a contemplated sale may be an appropriate consideration in some equitable distribution cases. We neither forbid nor require the practice. In this case, however, we hold that the trial court's refusal to deduct the costs of

sale was a proper exercise of its discretion. The record does not establish the expenses incident to the contemplated sale with sufficient specificity to require that such expenses be deducted.

■ The second issue is whether the court should have imposed a constructive trust pursuant to appellant's application for special relief. This claim arose when appellant learned during the separation that appellee intended to use marital funds to purchase a residence jointly with Sherry Small. Appellant's attorney promptly applied for equitable relief on October 9, 1985, attempting to forestall the purchase. Hearing was set for November 6, 1985. Prior to the hearing, however, the purchase was made on October 28, 1985, and the residence was titled in Sherry Small's name alone, though appellee had contributed marital funds toward the downpayment. The trial court held that appellee had acted deceptively and improperly, falsifying documents to use marital funds to purchase the house, yet the court declined to impose a constructive trust on the new residence. Instead, the court ordered appellee to make cash payments to appellant in the amount of the funds improperly diverted towards the purchase, as well as appellant's counsel fees incurred in seeking equitable relief.

Appellant argues that this disposition was an abuse of discretion by the trial court, for it permitted appellee to remove liquid assets from the distributable estate which was already overburdened with non-liquid assets, notably the marital residence and appellee's pension. Appellant believes the court was obligated to exercise its equitable power by declaring a constructive trust on the real estate so as to provide security for the repayment of the cash appellee had removed from the funds available for equitable distribution.

We hold that the trial court's refusal to provide equitable relief was a proper exercise of its discretion. Equitable relief, of course, is not appropriate if there is an adequate remedy at law. We agree with the trial court that the statutory remedy, reimbursement through distribution of marital property, was adequate in this case.

Significantly, the adequacy of the legal remedy is not measured by the success or failure of a legal claim. Rather, in deciding whether a remedy is adequate, it is the remedy itself, and not its possible lack of success, that is the determining factor. The fact that the statutory remedy may not be successful in realizing the fruits of a recovery at law, on account of the defendants' insolvency, is not, of itself, a basis for equitable intervention.

*Chartiers Valley School District v. Virginia Mansions Apartments, Inc.*, 340 Pa.Super. 285, 294–95, 489 A.2d 1381, 1386–87 (1985). We therefore reject appellant's second argument.

■ The next issue is whether the court erred in permitting additional testimony as to the value of appellee's pension rather than accepting the master's valuation which had been based on uncontradicted competent evidence offered through the report of appellant's expert at the master's hearing. The trial court deemed additional testimony to be necessary due to the master's uncertainty as to whether the expert's valuation had been reduced to present value. Master's report, 5/14/85, at 9. Appellant argues that the expert's report clearly indicated that the value was given as of October, 1982, the date of separation, that the court's scheduling of another hearing was unnecessary and erroneous, that the second hearing put the parties to needless expense and delay, and that the second hearing culminated in an undervaluation of the pension with a concomitant reduction in appellant's share in distribution of the marital estate.

We disagree. Prior to the master's hearing, appellee stipulated to the admissibility of the report. It was therefore admitted into evidence without authentication by the expert, with the result that the expert was not present to clarify or explain the report. Though careful study of the report indicates that the valuation date used by the expert was October 16, 1982, the report itself does not state that date, and never uses the term "present value." It is understandable that the master was uncertain whether or

not the value stated in the report, $91,040, was the present value of the pension. The uncertainty thus created led the trial court to hear additional testimony on this point. We believe the court was well within the bounds of its discretion to seek verification of the value of the single largest marital asset.

■ At the hearing before the court on February 6, 1986, appellant's expert testified that alternative, acceptable actuarial calculations produce values of $86,257.91 and $91,040, the figure he used in the report admitted in evidence at the master's hearing. Appellant argues that either figure is acceptable, but that the value of $91,040 introduced at the master's hearing should have been used and should have been increased by adding interest thereto until the date of the second hearing. Her position is that, inasmuch as the trial court erred by holding the hearing of February 6, 1986, unnecessarily, we should accept the value of $91,040 from the master's hearing of October 1, 1984, add interest of 8.5% per annum, and assign a value of $126,168 for purposes of equitable distribution.

Due to our conclusion that the trial court did not abuse its discretion in scheduling a hearing to supplement the inconclusive evidence presented to the master, we reject appellant's argument that the "error" requires us to recompute the value of appellee's pension. The value assigned by the trial court, $86,258, is supported by the testimony presented to the court, N.T., 2/6/86, at 35, 43, and will not be disturbed on appeal.

Appellant also claims that the trial court erred in denying her motion to strike appellee's untimely motion for post-trial relief. We note that the order of August 29, 1986, was a final decree which would not have required the filing of exceptions. In response to appellant's exceptions, however, the trial court vacated the order within thirty days so that consideration of the exceptions was proper. In any event, the court denied the exceptions filed by appellee. We therefore find no ground for relief.

■ The major thrust of this appeal is appellant's attack on the trial court's denial of her claim for alimony. She

asks us to "reinstate" the master's "award" of alimony in the amount of $100 per week for five years.[1] Appellant alleges two reasons why the denial of alimony was an abuse of discretion. First, the trial court heard no testimony relevant to alimony beyond the evidence submitted to the master which he relied upon in making his recommendation that alimony was appropriate. Appellant therefore believes the court erred in denying alimony on the basis of the same evidence used by the master. Appellant's second argument is that alimony is necessary to provide security in the event that appellee files a bankruptcy claim to discharge his obligation to make substantial cash payments to appellant pursuant to the equitable distribution order.

As to appellant's first argument, it must be noted again that the trial court, in considering alimony, is required to assess the evidence independently of the master, and is perfectly free to reach a conclusion contrary to the master's recommendation, whether or not additional evidence has been introduced. In this case, moreover, the trial court increased appellant's award of marital property in equitable distribution over the award recommended by the master before denying the award of alimony he had recommended. The court awarded a cash payment of $9,637 in addition to the property the master recommended be distributed to appellant. Thus, her share of the property distribution was substantially larger than her share under the master's recommendation. The court, of course, took into consideration appellant's property distribution in weighing her need for alimony. 23 P.S. § 501(a)(1).

Although appellant argues that the trial court violated *Hess v. Hess*, 327 Pa.Super. 279, 475 A.2d 796 (1984), by utilizing the criteria in 23 P.S. § 501(a) as a threshold for entitlement to alimony, it is clear that the court weighed the factors set forth in § 501(b), as required by *Hess, supra.*

1. Appellant misapprehends the role of a master in divorce proceedings. The master had no authority to award alimony and he did not purport to do so. He recommended that alimony be awarded by the court. The trial court, following its thorough and independent review of the record and the taking of additional testimony, declined to adopt the recommendation of the master in regard to alimony.

The court considered, inter alia, relative earnings and earning capacities, sources of income, the time necessary to find appropriate employment, and, by reference to the equitable distribution award, the factors set forth in § 401(d) which duplicate many of the factors in § 501(b). We do not regard the court's conclusion that alimony was unwarranted under the criteria of 23 P.S. § 501 to be an abuse of its discretion. *Hess, supra,* 327 Pa.Superior Ct. at 286, 475 A.2d at 800.

Appellant's second claim regarding her entitlement to alimony is novel. She asks that alimony be awarded as security to prevent appellee from using bankruptcy proceedings to avoid his obligation to pay appellant a substantial amount of cash under the award of equitable distribution, counsel fees and costs. Under federal bankruptcy law, obligations related to distribution of marital property are dischargeable, whereas alimony obligations are not. 11 U.S.C. §§ 523(a)(5) and 727. Appellant argues that, if appellee avoids his obligation to pay his cash obligation by initiating bankruptcy proceedings, an alimony award could be modified by the divorce court pursuant to 23 P.S. § 501(e) to protect appellant's right to receive the cash.

■ In evaluating this argument, we note that 23 P.S. § 501(a) and (b) do not suggest that alimony may be awarded in order to secure debts created pursuant to distribution of marital property. On the other hand, the broad purposes of the Divorce Code, 23 P.S. § 102(a)(4) and (a)(6)—to mitigate the harm caused by the divorce and to effectuate economic justice—suggest that a proposed bankruptcy by an obligor in a property distribution might be a relevant factor in determining whether an award of alimony is appropriate. Section 501(b) of the Divorce Code states that "[i]n determining whether alimony is necessary, ... the court shall consider *all* relevant factors, including ..." fourteen enumerated but non-exclusive ones. In an appropriate case, if the record established the likelihood that a property distribution order might be circumvented through bankruptcy proceedings, such a fact might be relevant in determining whether alimony is appropriate.

This is not such a case, however. There is nothing in the record which supports the supposition that appellee intends to avoid his obligations under the equitable distribution order by seeking the protection of the federal bankruptcy laws. The statement of appellant's counsel, "It is the opinion of the undersigned counsel for Appellant that Husband will almost certainly file bankruptcy as his [prior] counsel has threatened," brief for appellant at 41, is an unsupported allegation we may not consider in reviewing the trial court's discretion in denying alimony. In *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 489 A.2d 1291 (1985), the supreme court stated: "Alleging facts in a brief which a trial court has not passed on has been specifically condemned, and we continue to view such practice as improper." *Id.*, 507 Pa. at 215, 489 A.2d at 1296 (citations omitted).

While we are sympathetic to the possibility that the efficacy of an equitable distribution order might be frustrated under the federal Bankruptcy Code, the record in this case discloses no abuse of discretion by the trial court in failing to award alimony as a hedge against the mere possibility.

For the foregoing reasons, we affirm the orders appealed from in their entirety.