577 A.2d 576

**Susan POWELL, Appellee,**

**v.**

**William Theo POWELL, Appellant.**

**Susan POWELL, Appellant,**

**v.**

**William Theo POWELL, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 25, 1989.

Filed June 20, 1990.

Albert Momjian, Philadelphia, for appellant (at 537) and appellee (at 538).

Albert C. Oehrle, Norristown, for appellant (at 538) and appellee (at 537).

Before MONTEMURO, POPOVICH and CERCONE, JJ.

POPOVICH, Judge:

These are cross-appeals from an equitable distribution order entered in the Court of Common Pleas of Chester County. We affirm in part, reverse in part and remand this case for new disposition.

William and Susan Powell were married on April 20, 1974. They separated on September 23, 1983 and were divorced on January 18, 1989.[1] No children were born of the marriage. Both parties are well educated and in good health.

■ The Powells each appeal from the following order: AND NOW, this 18th day of January, 1989, it is hereby ORDERED AND DECREED that:

1. Susan Powell, Plaintiff, and William Theo Powell, Defendant, are divorced from the bonds of matrimony.

2. The marital residence of 2520 White Horse Road, Easttown Township, Chester County is awarded to Plaintiff.

3. All household furniture and contents remaining in the marital home are awarded to Plaintiff.

4. Defendant shall pay Plaintiff the sum of $3,357.00 in cash or, at Defendant's option, by transfer to Plaintiff or

---

1. Although the parties state that no final divorce decree has been entered in this case, we find that the trial court's order that the parties be divorced from the bonds of matrimony represents a final order for appeal purposes.

retention by her, of an equivalent number of shares of Westinghouse stock at the market price on the date of settlement.

5. All Westinghouse stock is awarded to Defendant, except as otherwise provided in Item 4.

6. Defendant's pension is awarded to him.

7. 1979 Datsun is awarded to Defendant.

8. Defendant's interest in the E.E.O.C. class action suit is not marital property.

9. All other miscellaneous accounts are awarded to the title owner, joint accounts shall be divided equally as of September 29, 1983 balances and may be applied to effect the provisions of Item 4.

10. The parties are directed to execute all deeds, stock transfers or other documents necessary to effectuate this order.

11. The fee of the Special Master shall be divided equally by the parties.

12. No alimony, counsel fees or costs are awarded.

It is within the discretionary authority of a lower court to equitably distribute the marital property. *Williams v. Williams*, 373 Pa.Super. 143, 540 A.2d 563 (1988); *Kleinfelter v. Kleinfelter*, 317 Pa.Super. 282, 463 A.2d 1196 (1983). Absent an abuse of discretion, the trial court's findings will not be disturbed on appeal. *Id.; see also Johnson v. Johnson*, 365 Pa.Super. 409, 529 A.2d 1123 (1987); *Commonwealth ex. rel. Levy v. Levy*, 240 Pa.Super. 168, 361 A.2d 781 (1976) (defines "abuse of discretion"). After reviewing the record and the parties' briefs, as well as the applicable law, we hold that the trial court erred in its method of dividing the marital property in the instant case.

On appeal, the parties raise several issues. William Powell argues that the trial court abused its discretion by:

(1) adopting an income equalizing approach in distributing the marital property;

(2) including non-marital property in the equitable distribution award;

(3) excluding marital property from the equitable distribution award;

(4) underestimating Mrs. Powell's earning capacity;

(5) failing to consider his contribution to and Mrs. Powell's dissipation of the marital estate; [and]

(6) awarding alimony to Mrs. Powell.

Further, he asserts that the trial court abused its discretion in distributing the marital property by:

(1) adopting a stale and arbitrary value for the marital home and the fair market rental value of the marital home;

(2) awarding the marital home to Mrs. Powell instead of ordering the sale of the house; and

(3) awarding the Westinghouse stock to him without considering the volatile value of the stock or the tax consequences of the award.

Susan Powell counters these arguments. Additionally, she contends that the trial court abused its discretion by:

(1) improperly failing to consider a portion of the EEOC award as marital property;

(2) improperly omitting to direct her continuation as a non-employee beneficiary of Mr. Powell's health insurance at Westinghouse; [and]

(3) improperly failing to award legal fees in Mrs. Powell's favor.

Further, she states that in valuing and distributing the marital property, the trial court properly

(1) [undertook] a full analysis of all eleven factors of § 401(c) including an analysis of the income available to the parties once division of the property became effective;

(2) [identified] all non-marital and marital property with the exception of a portion of the EEOC award;

(3) [evaluated] the marital home; and

(4) [divided] and [awarded] the marital property.

Due to the complexity of this case, we will address each issue seriatim.

 Mr. Powell first asserts that the trial court neglected to follow the statutory mandates of 23 P.S. § 401(d); this section provides the court with a list of factors to be considered in a case requiring equitable distribution. Instead, he alleges that the trial court improperly adopted "an income equalizing approach" in dividing the marital property.

In the instant case, the property awards weighed in favor of Mrs. Powell. Mr. Powell contests this distribution. In support of his position, Mr. Powell notes that Mrs. Powell is twenty years his junior, well-educated and fluent in three languages. She has teaching and research experience and the capacity for future earnings. She is the named beneficiary with a remainderman interest in a trust fund that generates a large income. Additionally, the Powells' marriage lasted only ten years.

Conversely, Mr. Powell is retired and living on a fixed budget. He claims that the trial court erred in not considering these factors in dividing the marital assets.

We have held that when the trial court distributes marital property, it must not presume a fifty/fifty division. *Fratangelo v. Fratangelo,* 360 Pa.Super. 487, 493–94, 520 A.2d 1195, 1200–01 (1987). The court must first analyze the factors set forth in 23 P.S. § 401(d). *Id.* In the instant case, the trial court purported to review "the eleven factors provided in Section 401(d) of the Divorce Code" (Trial Court opinion, at 3), yet the trial court explicitly stated that

[d]efendant's social security and pension accounts for 42% of the combined income; [p]laintiff's earning capacity accounts for 20%. If [p]laintiff receives 22% additional, the parties would be on equal footing. The remaining 16% will be allocated 11% to [p]laintiff and 5% to [d]efendant. This distribution can be accomplished by awarding the marital home to [p]laintiff and Westinghouse shares to [d]efendant.

(Trial Court opinion, at 7). In light of this statement, and without the benefit of more detailed reasoning by the trial court as to how it arrived at its conclusions, we are constrained to agree with Mr. Powell that the trial court placed undue emphasis on equalizing the parties' economic situations and did not adequately consider the elements of § 401(d) before distributing the property. *See also* Trial Court opinion, at 8.

■ Mr. Powell also asserts that the trial court inaccurately calculated the percentage of his pension benefits that properly could be considered a marital asset. He argues that the trial court failed to distinguish Mr. Powell's total income from that portion which is subject to the provisions of 23 P.S. § 401(e).[2] As such, Mrs. Powell's award was deduced from the total value of Mr. Powell's benefits rather than the marital property portion.

The estimated coverture fraction in this case was between $41,000.00 and $51,000.00. *See* Reproduced Record (R.R.) at 320a, 335a–336a. Rather than distributing the property

---

**2.** 23 P.S. § 401(e) provides, in part:

For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage, including the increase in value prior to the date of final separation of any nonmarital property acquired pursuant to paragraphs (1) and (3), except:

(1) Property acquired prior to marriage or property acquired in exchange for property acquired prior to the marriage.

(2) Property excluded by valid agreement of the parties entered into before, during or after the marriage.

(3) Property acquired by gift, except between spouses; bequest; devise; or descent.

(4) Property acquired after final separation until the date of divorce, except for property acquired in exchange for marital assets.

(5) Property which a party has sold, granted, conveyed or otherwise disposed of in good faith and for value prior to the date of final separation. [...]

(7) Property to the extent to which such property has been mortgaged or otherwise encumbered in good faith for value, prior to the date of final separation.

(8) Any payment received as a result of an award or settlement for any cause of action or claim which accrued prior to the marriage or after the date of final separation regardless of when the payment was received.

based upon the coverture fraction, the trial court considered Mr. Powell's total income,[3] including the balance of his (personal) pension plan funds and his social security income which he was not yet entitled to receive at the time the parties separated. *See* 23 P.S. § 401(e); *Braderman v. Braderman,* 339 Pa.Super. 185, 488 A.2d 613 (1985) (discussing pensions). *See also King v. King,* 332 Pa.Super. 526, 530, 481 A.2d 913, 915 (1984), wherein we held that "only that portion of the pension attributable to the period commencing with the marriage and ending on the date of separation is marital property within the meaning of the Divorce Code."

Importantly, Social Security benefits are not subject to equitable distribution. *See Flemming v. Nestor,* 363 U.S. 603, 609–10, 80 S.Ct. 1367, 1371–72, 4 L.Ed.2d 1435 (1960) ("[t]o engraft upon the Social Security system a concept of 'accrued property rights' would deprive it of the flexibility and boldness in adjustment to ever-changing conditions which it demands."); *Sorbello v. Sorbello,* 21 D & C 3d 187, 196 (1981) (social security benefits are not marital property; "[w]hereas, in general, individuals accrue property rights to pensions, a form of deferred compensation, they accrue no property rights to Social Security benefits."). A trial court may only distribute money and property that is part of the marital estate. In the instant case, the trial court divided monies that were not assets of the marriage.

Mr. Powell also argues that the increase in value of Mrs. Powell's interest in her trust fund should not have

---

**3.** The effect of this error was to divide the property founded upon the assumption that Mr. Powell's retirement income composed 42% of the marital funds. (Trial Court opinion, at 7).

We note that the trial court's order awarded Mr. Powell's pension to him. However, we construe Mr. Powell's argument to be that the trial court's improper calculation affected the equitable distribution scheme as a whole. We agree. *See Lowry v. Lowry,* 375 Pa.Super. 382, 544 A.2d 972 (1988) (in equitably distributing pension benefits, coverture fraction must be applied so that only the portion of the pension that was acquired during marriage is subject to distribution; explains how coverture fraction is determined).

been excluded from the marital property.[4] Complimenting this argument, he contends that not only is she independently wealthy, but she has great potential to earn a salary in the future.[5]

Mrs. Powell acquired an interest in the trust fund before she married Mr. Powell. Therefore, the fund is non-marital property. *See Diamond v. Diamond*, 360 Pa.Super. 101, 519 A.2d 1012, 1016 (1987) (in determining whether an asset constitutes marital property, the test is when the right to the asset accrued, not when the asset was received); 23 P.S. § 401(e). The issue becomes whether the increase in the fund's value during the Powells' marriage constitutes marital property. If so, then it is subject to distribution.

4. Mrs. Powell is the beneficiary of the Edward A. Schmidt Trust. According to the terms of the Trust, Mrs. Powell will have access to the fund's income upon her mother's death and will be entitled to the principal twenty years thereafter.

The record indicates that the Schmidt Trust is valued at approximately $2,000,000.00. (R.R. at 219a). In 1976, the trust was worth $400,000.00 (R.R. at 218a). The appreciated difference, therefore, amounts to approximately $1,600,000.00. Mr. Powell asserts that Mrs. Powell's interest in the trust fund increased by $744,388.00 between the date of marriage and the date of separation. (R.R. at 219a). (Since Mrs. Powell shares a one-half interest in the trust's principal with her brother, she likewise has a one-half interest in its increase.) *See* 23 P.S. § 401(d)(5).

5. Mr. Powell argues that pursuant to 23 P.S. § 401(d)(5), the court must consider "the opportunity of both parties for future acquisition of capital assets and income." (Appellant's brief, at 28). He argues that Mrs. Powell will inherit money upon her mother's death, and that the court should have accounted for this wealth accretion in its § 401(d)(5) evaluation.

Mrs. Powell's inheritance is purely speculative. The general rule regarding expectancies is that a court may not consider the mere possibility of an inheritance by a spouse as a factor in equitable distribution. *Gruver v. Gruver*, 372 Pa.Super. 194, 539 A.2d 395 (1988). We have held that it constitutes an abuse of discretion to include the possibility of an inheritance in determining an equitable distribution. *Id.* Further, Mrs. Powell's inheritance is necessarily contingent on her surviving her mother.

There is evidence that during the Powells' marriage, Mrs. Powell's mother helped to supplement her daughter's finances. (R.R. 103a–108a). This additional income constitutes marital property. 23 P.S. § 401(d).

On remand, the trial court should reconsider the parties' financial situations as *a factor* in dividing the marital assets.

We conclude that the recent case, *McGinley v. McGinley*, 388 Pa.Super. 500, 565 A.2d 1220 (1989) is dispositive of this issue.[6] *Cf. Aletto v. Aletto*, 371 Pa.Super. 230, 237, 537 A.2d 1383, 1386 (1988) (the increase in value during marriage of wife's stock, which was *actually acquired* pre-marriage, was considered marital property for equitable distribution purposes). *Cf. Anthony v. Anthony*, 355 Pa.Super. 589, 591, 514 A.2d 91, 92 (1986) (accord, pursuant to 23 P.S. § 401(e)–(f); the time of property acquisition rather than the method determines whether the property is marital under the Divorce Code).

In *McGinley v. McGinley*, 388 Pa.Super. 500, 565 A.2d 1220 (1989), this court held that the appellant's future interest in a testamentary trust vested upon his birth, even though his receipt of the trust funds was contingent upon his surviving his father. This court further concluded that the increase in value of the appellant's interest in the trust was not marital property because the appellant did not *possess* his interest in the trust at the date of the parties' separation. We stated:

It is undisputed that, under 23 P.S. § 401(e)(3), the corpus of the trust is excluded from marital property. The question is whether the legislature intended the trust's increase in value to be included as marital property, as the legislature expressly included the increase in value of property acquired by gift, bequest, devise or descent § 401(e)(3), *supra* .... It is also undisputed that, if an interest is so contingent that it is a mere expectancy, then no aspect of it can be included as marital property.

**6.** We note that the *McGinley* case was not filed at the time the parties prepared their briefs. However, it is established that changes in the law generally apply to cases pending in this court. In *Fairbanks v. Travelers Insurance Company*, 337 Pa.Super. 39, 486 A.2d 469 (1984), we stated:

In Pennsylvania, decisions changing the law are usually applied to cases pending on appeal. If such decisions rely upon statutory interpretations, they relate back to the date the particular statute became effective, because they merely interpret existing legislation. *Id.*, 337 Pa.Superior Ct. at 42, 486 A.2d at 470–71. *See also Aletto v. Aletto*, 371 Pa.Super. 230, 235, 537 A.2d 1383, 1385 (1988).

(*Citing Hutnik v. Hutnik,* 369 Pa.Super. 263, 535 A.2d 151 (1987)).

It has been the common law for centuries, and it has always been the law of this Commonwealth, that a future interest may be vested, even if a condition precedent must occur before the actual passing of the property. (*Citing Overbrook Heights Building & Loan Association v. Wilson,* 333 Pa. 449, 458, 5 A.2d 529, 532 (1939)). This is true even if the future event is the remainderman's own death. (Citation omitted).... [B]ecause [appellant's] father must die before [appellant] comes into possession, and because [appellant] could predecease his father, [appellant's] interest is said to be vested subject to divestment. (Citation omitted).... Accordingly, his interest in this property vested before [his] separation from [his wife]. Our inquiry does not end here, however. We must proceed to the question of whether the legislature intended to include in its definition of marital property the increase in the value of a vested future interest such as [appellant's].... [W]e appreciate that this is primarily an issue of statutory interpretation. Against a background of the mandate to "[e]ffectuate economic justice between parties," 23 P.S. § 102(a)(6), the legislature enumerated types of property that could fairly be construed as having been accumulated during the marriage in 23 P.S. § 401(e)(3), quoted above.

When interpreting a statute "[w]ords must be given their plain meaning, unless doing so would create an ambiguity, and we must interpret statutes in accordance with the legislative intent." (Citations omitted). The plain meaning of the phrase "property acquired" is property that has actually come into possession. One could argue that a vested future interest is an interest that has come into possession. However, with no Pennsylvania precedent to guide us at this point, we decline to impose this possibly strained interpretation upon the statute; we decline to enlarge its purview to include present "possession" of future interests. Hence, we conclude that the

increase in value of [appellant's] vested future interest in the trust does not come under the legislative definition of marital property. We hold this with full awareness that we have also held, where the legislature has not expressly included pensions, that they are, nevertheless, whether vested or non-vested, marital property. (Citation omitted).

[...] We reiterate that, given the plain language of our Divorce Code, we decline to speculate upon legislative intent and so we hold that the increase in value of [appellant's] vested future interest is not marital property. We do this recognizing that the legislature may at any time clarify or modify the statute.

*Id.*, 388 Pa.Superior Ct. at 506–513, 565 A.2d at 1223–1226. In light of the *McGinley* decision, we hold that the increase in value to Mrs. Powell's trust fund is not marital property and therefore is not subject to equitable distribution. We find no error in the trial court's exclusion of the increased value in its equitable distribution order.

Mr. Powell asserts that the trial court erred in its finding that Mrs. Powell's earning capacity is merely $13,000.00 per year. We agree with Mr. Powell that the trial court assigned an unreasonably low earning capacity to Mrs. Powell. Given Mrs. Powell's background, education, experience, age, health and freedom to pursue a career, we find that the trial court abused its discretion in assessing her earning capacity at $13,000.00 per year—especially in light of the fact that that was Mrs. Powell's approximate salary when she was a research assistant at Penn in *1980*. *See Commonwealth ex. rel. Simpson v. Simpson*, 287 Pa.Super. 356, 361, 430 A.2d 323, 326 (1981) (lists factors to be considered when determining earning capacity).[7] *See also* Letter by Bernard W. Albert, R.R. 361a (vocational

7. It should be noted that Mrs. Powell operates the marital home as a boarding house. This venture has generated approximately $50,000.00 in income to Mrs. Powell between 1981 and 1987. (R.R. 506a). *See also* R.R. at 175a–179a; 270a–276a. The trial court acknowledged that Mrs. Powell received rentals for others' use of the marital premises, but it did not include this source of income in its evaluation of Mrs. Powell's earning capacity. *See* Trial Court opinion, at 6, 7.

expert assessed that Mrs. Powell's earning capacity was at least $16,600.00—$20,800.00 per year in 1987).

Mr. Powell next alleges that the trial court erred by failing to consider the parties' contributions as well as dissipations to the marital estate. After a review of the record, we find no merit to this contention. We echo the language used by the trial court in evaluating this claim:

> Neither party has made a contribution to the other for education, training or increased earning power of the other party. Plaintiff contributed $13,000.00 to Defendant to settle with his former wife which resulted in the acquisition by Defendant of his former marital residence. The property was subsequently placed in joint ownership with Plaintiff and later sold and the proceeds used to purchase the present marital residence. Defendant made all mortgage payments until his exclusion from the marital residence and thereafter Plaintiff was responsible for such payments during her period of exclusive possession. I find no cogent reason to find a cognizable contribution by either party to the marital estate or to charge either party with dissipation of it.

Trial Court opinion, at 5–6.

Mr. Powell also argues that the trial court erred in awarding alimony to Mrs. Powell because Mrs. Powell does not meet the threshold requisites of 23 P.S. § 501(b). Again, we find that Mr. Powell's position is without basis. The trial court's order clearly states that "[n]o alimony, counsel fees or costs are awarded." [8]

Mr. Powell next alleges that the trial court erred in adopting an inaccurate valuation of the marital residence and its fair market rental value, and in failing to consider the tax consequences of the property award. The marital home was valued at $370,000.00 in 1987 and is presently worth approximately $447,000.00. *See* R.R. at 269a–275a.

---

8. We note that Mrs. Powell was awarded alimony pendente lite. Her last award was in 1985. *See* Trial Court opinion, at 4. We do not find that the trial court abused its discretion in allowing Mrs. Powell alimony pendente lite.

He contests the trial court's finding that there is only $260,000.00 of equity in the house.[9] Conversely, Mrs. Powell argues that the house was appraised in 1983 and valued at $265,000.00. (R.R. at 309a).

In 1986, Mr. Powell's appraiser estimated that the market value of the property was $335,000.00. (R.R. at 348a–349a). The following year, the appraiser testified that the property had increased in value to $370,000.00. (R.R. at 269a–275a).

■ In *Sergi v. Sergi*, 351 Pa.Super. 588, 506 A.2d 928 (1986), we stated:

[s]ince equitable results will most likely flow from providing the court with the most recent information available, it is persuasively argued that this would occur by valuing marital property as of the date of the equitable distribution hearing. However, as the above discussion indicates, such is not always the case. Therefore, we do not attempt at this time to establish a valuation to be used in every situation. To recognize a specific valuation date as a matter of law would deprive the trial court of the necessary discretion required to effectuate economic justice.

*Id.*, 351 Pa.Superior Ct. at 594, 506 A.2d at 932. Clearly, it is within the trial court's powers to assign a value to the marital home or to equitably divide the value of the marital residence between the parties. However, the valuations should be made as close as possible to the property distribution date. *Sutliff v. Sutliff*, 518 Pa. 378, 543 A.2d 534 (1988); *Aletto v. Aletto*, 371 Pa.Super. 230, 537 A.2d 1383 (1988).

■ Both Mr. and Mrs. Powell cite *Zeigler v. Zeigler*, 365 Pa.Super. 545, 530 A.2d 445 (1987) for the proposition that "adjustment in the value of a residence for expenses associated with a contemplated sale may be an appropriate consideration in some equitable distribution cases." *Id.*,

9. The trial court reached this figure by assigning a fair market value of $360,000.00 to the home and then deducting mortgage, real estate sales commission and transfer tax in the amount of $100,000.00. (Trial Court opinion, at 6–7). The record does not reflect how the trial court arrived at the $100,000.00 breakdown.

365 Pa.Superior Ct. at 550, 530 A.2d at 447. This rule is effective even if the parties did not contemplate selling the home. *Id.* However, the *Zeigler* court went on to state:

> [w]e neither forbid nor require the practice. In this case, however, we hold that the trial court's refusal to deduct the costs of sale was a proper exercise of its discretion. The record does not establish the expenses incident to the contemplated sale with sufficient specificity to require that such expenses be deducted.

*Id.* Here, we conclude that although the trial court had the authority to estimate the equity in the house, no reasoning or mathematical computations were supplied to support the $100,000.00 downward adjustment. *See Semasek v. Semasek,* 509 Pa. 282, 502 A.2d 109 (1985) (trial court should show support for its conclusions). On remand, the trial court should specify how it arrived at the figure of $260,-000.00, representing the equity in the marital home. If a new valuation is ordered, we direct that the trial court exercise its discretion and make the appropriate adjustments to the instant equitable distribution scheme.[10] *See Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534 (1988); *Morschhauser v. Morschhauser,* 357 Pa.Super. 339, 516 A.2d 10 (1986); *Winters v. Winters,* 355 Pa.Super. 64, 512 A.2d 1211 (1986); *Sergi v. Sergi,* 351 Pa.Super. 588, 506 A.2d 928 (1986) (all explaining valuation of marital property).

■ The trial court found that Mr. Powell is entitled to his portion of the fair market rental value of the marital residence since July, 1985, which amounted to $6,468.00. The trial court did not clarify how it arrived at this figure in its opinion.[11]

Mr. Powell contends that

---

10. We note that in assessing the value of the marital property, the trial court is free to believe all, part, or none of the testimony presented relative to the property values. *Aletto v. Aletto,* 371 Pa.Super. 230, 537 A.2d 1383 (1988).

11. The record indicates that the house has a fair market rental value of between $2,200.00 and $2,800.00 per month (R.R. at 275a) and that Mrs. Powell collected approximately $50,000.00 in rent between 1981 and 1987. (R.R. at 506a; *see also* R.R. at 174a–178a).

[i]n light of the numerous infirmities in the reasoning and valuations relied on by the court to distribute the marital home to Wife, the lower court's Order should be vacated and sale of the marital property should be expressly ordered since the home is the major marital asset. In the alternative, if it is determined that Wife should retain the marital home, a buy-out remedy should be recalculated based upon the actual fair market value of the home less the actual equity in the home without reference to sales costs which Wife will not incur. Husband is entitled to his equitable distribution share in the marital home based on accurate calculations.

(Appellant's brief, at 40). While we decline to order that the marital home be sold, we agree with Mr. Powell that he is entitled to his equitable share of the marital property as a whole. In the trial court's discretion, he may be entitled to a portion of the fair market rental value of the marital home. Mr. Powell's award should be based on proper estimations, and we remand this case for such clarifications.[12] *See Bold v. Bold,* 358 Pa.Super. 7, 516 A.2d 741 (1986) (a trial court granting a divorce may not resort to a buy-out remedy absent specific findings, on record, as to why the marital property could not be divided); *see also Barletta v. Barletta,* 506 Pa. 404, 485 A.2d 752 (1984); *Brojack v. Brojack,* 385 Pa.Super. 502, 561 A.2d 788 (1989) (accord); 23 P.S. § 401(c, d).

Finally, Mr. Powell contends that the trial court erred by awarding him stock without considering the stock's volatile worth or the tax ramifications of selling it. There is no indication that the trial court did not recognize the volatile value of stock. However, it is unclear whether

12. Mr. Powell argues that his share of the fair market rental value is $31,516.00 ($2,200.00 × 21 months = $46,200.00, less expenses ($699.28 mortgage × 21 months = $14,684.00) = $31,516.00). On remand, the trial court should make an independent calculation of the actual fair market rental value of the property, (less expenses, if applicable), and should make any adjustments to the valuation that it deems necessary to determine Mr. Powell's share. *See Hutnik v. Hutnik,* 369 Pa.Super. 263, 535 A.2d 151 (1987); *Gee v. Gee,* 314 Pa.Super. 31, 460 A.2d 358 (1983).

the trial court considered the tax consequences of the stock award pursuant to 23 P.S. § 401(d)(10). *See Hovis v. Hovis,* 518 Pa. 137, 541 A.2d 1378 (1988) (discusses tax liabilities); *see also White v. White,* 382 Pa.Super. 478, 555 A.2d 1299 (1989). On remand, and in keeping with the spirit of the original equitable distribution order, the trial court may consider dividing some or all of the stock between the parties and assigning Mr. Powell's basis in the transferred stock to Mrs. Powell. The effect of this arrangement would be to remove the tax liability from one party and allow both parties the freedom to sell their stock when they choose.

Mrs. Powell's cross-appeal raises three issues for our consideration: (1) whether the trial court should have considered a portion of Mr. Powell's EEOC award as marital property; (2) whether the trial court should have ordered that Mrs. Powell be continued as a non-employee beneficiary of Mr. Powell's Westinghouse health insurance plan; and (3) whether the trial court should have awarded reasonable legal fees in her favor. We find each claim to be meritless.

Mr. Powell has a pending discrimination claim against Westinghouse. If, in the future, there is a determination in Mr. Powell's favor, then he could possibly receive compensation as a result of the lawsuit. *See* R.R. at 468a. However, Mr. Powell's cause of action accrued in 1985: post-separation. *See* 23 P.S. § 401(e)(4), (e)(8); *Hurley v. Hurley,* 342 Pa.Super. 156, 492 A.2d 439 (1985). As such, any recovery to which he may be entitled is not marital property.

Mrs. Powell also asserts that Mr. Powell has a continuing duty to provide her with health coverage under his company's health plan. We find this claim to be without merit. Mr. Powell notes that pursuant to his company's policy, the entry of a final divorce decree terminates Mrs. Powell's right to be a named beneficiary under the policy. Therefore, Mrs. Powell's coverage lapses under the terms of Westinghouse's policy, not due to any willfully unfulfilled obligation by Mr. Powell. Additionally, Mrs. Powell has the

means to maintain her own health plan. We find no abuse of discretion in the trial court's directive regarding this issue.

Finally, Mrs. Powell claims that the trial court erred in failing to award attorney's fees to her pursuant to 23 P.S. § 502. While we realize that these proceedings have been extensive and complicated, we nevertheless find no basis upon which to justify Mrs. Powell's request.

For all of the foregoing reasons, we affirm the trial court's findings in part, reverse in part, and remand this case for further proceedings consistent with this opinion.

Jurisdiction relinquished.

CERCONE, J., concurs in the result.