677 A.2d 1214

**Patricia GILL, Appellant,**

v.

**Donald Joseph GILL.**

Superior Court of Pennsylvania.

Argued Feb. 8, 1996.

Filed May 29, 1996.

612

Chris F. Gillotti, Pittsburgh, for appellant.

Ralph L.S. Montana, Clarion, for appellee.

Before JOHNSON, FORD ELLIOTT and HESTER, JJ.

HESTER, Judge:

Patricia Gill appeals from the July 25, 1995 final decree of equitable distribution in which the court divided marital property and granted her past due alimony pendente lite ("APL") and permanent alimony in the amount of $2,700 per month until age sixty-five. Wife asserts the trial court erred in awarding her only thirty-eight percent (38%) of the marital estate, refusing to grant her motion for an option to compel a forced buy-out of her shares in Husband's businesses, and denying her request for counsel fees. We affirm the division of marital property but vacate and remand to the trial court for award of counsel fees to Wife and an evidentiary hearing regarding its denial of appellant's request for a buy-out option.

The testimony reveals the following. The parties married on April 7, 1962. Three children were born of this marriage: Shanna, born August 9, 1962, Donald, born October 2, 1965, and Kelly, born January 26, 1968. All three have attained their majority. The parties first separated in 1978. They lived separate and apart for many years but continued to participate together in business, social, and family functions. Wife traveled with Husband and attended business meetings and joined in family reunions, weddings, and family vacations. The parties attempted a reconciliation in January, 1990, but ultimately separated again in September, 1990.

Hearings were conducted before a master during April, 1993. The master rejected Husband's argument that the parties had separated when they first lived apart prior to their attempted reconciliation. Therefore, the master included all the accumulation and appreciation in the value of property during that period as part of the marital estate. The master entered proposed findings of fact and conclusions of law. A divorce decree was entered on June 13, 1994. Following the trial court's denial of exceptions by both parties, the court entered the contested decree of equitable distribution. This appeal followed.

The testimony reveals that Wife earned a bachelor's degree in elementary education but worked as a teacher for only two

years. She stopped teaching following the birth of the second child, Donald, and devoted herself to being a homemaker mother and corporate wife. At the time of the hearings, Wife was working part-time at Penn State University as an academic counselor and earning a net income of $458.00 per month. Currently, Wife is working towards attaining a master's degree in education.

Husband also initially attained a degree in education and began working as a high school teacher and football coach. His teams did not do well while he was coaching, and he did not want to teach without being a coach. Appellant started to work as a salesman for Amos L. Dolby Company ("Dolby"), which was in the business of selling and providing explosive services to coal mining operations. Husband did extremely well as a salesman, and shortly thereafter, the owner, Mr. Guy Bertiaus, decided to retire and sell the business. Husband arranged to purchase fifty percent of the stock of Dolby. The distributor, Atlas Powder Company, owned the other half of the issued company stock. Husband persuaded Atlas Powder to approve and help finance the sale to him and then persuaded experienced financial and sales managers to work for Dolby in return for granting them minority stock interests in the company.

Husband's management of Dolby turned it into a thriving enterprise, especially due to increased demand for coal during this period of the national energy crisis. Dolby finances were used to acquire other companies as subsidiaries, including Alpha Environmental Mining Company, a coal strip mining company, which Dolby acquired in return for cash and forgiveness of debt owed by Alpha to Dolby. Ultimately, Alpha Environmental Mining Company was converted into a real estate holding company to avoid competing with the other mining companies to whom Dolby sold explosives. Other subsidiary companies created include Clarion Explosives, Inc., which is in the business of delivering explosive products used by its customers in mining operations, and Union Drilling and Blasting, Inc., which performs the same function when union-only workers are required by the customers. This arrange-

ment kept Dolby insulated for liability purposes from actual delivery and use of explosives. Husband later helped organize Nobel Insurance Co., a company founded offshore, outside the continental United States, to provide insurance for explosive companies when insurance rates became prohibitive. Finally, Husband invested as a partner with two friends in Auto Group Enterprises, a corporation formed to purchase Guiher Ford and to which State College Ford–Lincoln–Mercury later was added. The parties do not contest the valuation of the assets in the marital estate, which total $4,153,829, including $3,156,-362 assigned to Husband's business interests.

■ Initially, we note that our standard of review in appeals from a decree of equitable distribution is clear. In *Fonzi v. Fonzi*, 430 Pa.Super. 95, 99, 633 A.2d 634, 636–37 (1993) (citations omitted), we stated:

> Our scope of review in equitable distribution matters is limited. It is well established that "absent an abuse of discretion on the part of the trial court, we will not reverse an award of equitable distribution." When reviewing the record of the proceedings, we are guided by the fact that trial courts have broad equitable powers to effectuate justice and we will find an abuse of discretion only if the trial court has misapplied the law or failed to follow proper legal procedures. The finder of fact is entitled to weigh the evidence presented and assess [sic] its credibility. The fact finder is free to believe all, part or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below.

Furthermore, the trial courts have broad equitable powers to effectuate justice in these matters and are to analyze and apply the factors set forth in 23 Pa.C.S. § 3502.[1] *Powell v. Powell*, 395 Pa.Super. 345, 577 A.2d 576 (1990).

1. 23 Pa.C.S. § 3502, in pertinent part, provides:

   (a) *General Rule.*—In an action for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such proportions and in such manner as the court deems just after considering all relevant factors, including:

■ Appellant first argues that the court abused its discretion when it awarded her only thirty-eight percent of the marital assets. She gives great weight to the twenty-eight year length of the marriage and the fact that she has forsaken other opportunities to center her life around home and children. She argues the court, in effect, awarded her fifty percent of the assets as they existed in 1978 which undermined its finding that the parties did not separate until 1990. Moreover, Wife argues that Husband was a passive investor in many of the enterprises outside Dolby, such as the Nobel Insurance Co. stock and Auto Group. Thus, she argues the increase in value is not due to his special effort or skill, and she should share equally in the appreciation. Consequently, she contends that the court's analysis of the § 3501 factors does not support its ordered distribution in which she received substantially less than one-half of the value of the marital assets and therefore, contends the result is erroneous and an abuse of discretion. She buttresses this argument by noting that Husband was awarded as much as eighty-five percent of certain business assets.

We disagree. In her argument, Wife ignores that she will receive permanent alimony in the amount of $2,700 per month until age sixty-five. This represents an income in excess of

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party, including Federal, State and local tax ramifications, at the time the division of property is to become effective.

$30,000 per year and substantial assets would be required to generate this annual income. Thus, if this is considered, it is not unjust in the circumstances to award Wife less than half of the marital assets. Moreover, it is clear Husband received a substantially larger share of the business assets and investments since Wife received a larger share of real estate and stock portfolio investments. We note that Wife received one-half of Husband's Dolby pension. Since we find the court's award is supported by the record, we do not find an abuse of discretion or an error of law. *Fonzi v. Fonzi, supra.*

■ Next, Wife argues that the trial court erred in rejecting her request for the option of a forced buy-out of her interest in Dolby and the Auto Group. She contends that nearly thirty-eight percent of the distribution to her consists of forty-five percent interest in shares of Dolby and Alpha, and a fifteen percent share in stock in the Auto Group. This leaves Husband in control in both instances with a majority interest. It leaves Wife powerless as a minority shareholder subject to Husband's whim and without power or remedy should Husband take actions which prove inimical to her interests. It further ties her to him and exposes her to possible future acrimony. She contends that such an arrangement is especially egregious where there were liquid assets available, such as Nobel stock, which could have been awarded to her instead of the minority stock she received.

In *Barletta v. Barletta,* 506 Pa. 404, 409, 485 A.2d 752, 754 (1984)(footnote omitted), we stated:

> We are not saying that the remedy of ordering a buy-out is prohibited by the statute. We note that under Section 401(c), the hearing court is given full equity power to "grant such other relief or remedy as equity and justice require"; and we can envision situations where the distribution of certain components of marital property would be truly impracticable or economically unwise. However, we interpret section 401(c) as a as general provision which must be construed as subservient to the more specific provision of Section 401(d) that a hearing court shall "divide, distribute

or assign the marital property between the parties." 1 Pa.C.S. § 1933.

... [W]e hold that prior to a court making or approving a buy-out remedy, it is required to make specific findings as to why a division of the property cannot be effectuated. Finally, any valuation of the cost of a proposed buy-out must be tied to the value actually received from a bona fide purchaser.

In *Barletta*, the Supreme Court concluded that the buy-out of personal property was not justified where it could easily have been divided without further ramifications, and the trial court provided no basis for ordering the buy-out remedy other than convenience. In contrast, in *Ryan v. Ryan*, 528 Pa. 186, 596 A.2d 140 (1991), the Supreme Court held that a buy-out was appropriate in certain instances since nothing compels an in-kind distribution in all circumstances. *Ryan* involved closely held stock as opposed to easily divisible personal property as in *Barletta*. The majority in *Ryan* rejected the dissenting view that an in-kind distribution made sense where there was evidence in the record of particular difficulty in valuing the closely held stock, that the wife would be precluded from exercising voting rights for shares she received, and there was no evidence she would be disruptive to the company or attempt to thwart legitimate corporate activities. Noteworthy in *Ryan* was the fact that the husband was ready, willing, and able to buy-out his former spouse who owned only fifteen percent of the closely held stock, which was non-voting. The Supreme Court concluded that the trial court provided sufficient justification to find it truly impracticable or economically unwise to divide closely held stock. Consequently, the Supreme Court upheld the buy-out ordered by the trial court.

Instantly, the court accepted the Master's finding that a buy-out was undesirable and might imperil the economic soundness and viability of Husband's enterprises. Our examination of the record, however, reveals that this conclusion is not based on any financial analysis or testimony. Rather, Husband indicated he disliked debt, a liquidation would hurt the businesses, and he would like to continue the businesses

and pass them to his son. Master's Hearing, 4/29/93, at 142–45. Additionally, Husband's proposed distribution was to run the businesses until 1999, when he would convey them to his son and allow his son to negotiate the buy-out of Wife. Indeed, Wife in her proposed distribution agreed to postpone her distribution if guaranteed a substantial permanent alimony. However, we find the court ignored the fact that Husband enjoys a long-standing relationship with the other minority shareholders which could give him effective control to freeze-out Wife. Wife would be powerless not only to defend the value of the principal of her interest in the companies but also to ensure fair treatment with respect to future dividends on her stock. Further, she will receive no corporate remuneration for services as does Husband. There is evidence Husband continues to acquire subsidiary companies, retire corporate debt ahead of schedule, and has spun-off some of the enterprises to his son. Moreover, we conclude there is no evidence that the court adequately weighed the factor of Wife's enforced co-existence and cooperation with Husband absent the option of a forced buy-out. Also, unlike the situation in *Ryan,* where the wife's interest was limited since she owned only fifteen percent of the stock which was non-voting, here there would be a substantial continued business relationship required between the parties since Wife would be a forty-five percent shareholder of the businesses for the foreseeable future.

In *Powell v. Powell,* 395 Pa.Super. 345, 361, 577 A.2d 576, 584 (1990), we stated: "[A] trial court granting a divorce may not resort to a buy-out remedy absent specific findings, on the record, as to why the marital property could not be divided." *see also Barletta v. Barletta,* 506 Pa. 404, 485 A.2d 752 (1984); *Brojack v. Brojack,* 385 Pa.Super. 502, 561 A.2d 788 (1989) (accord); 23 Pa.C.S. § 401(c, d). Instantly, we conclude the trial court gave inadequate reasons for choosing to reject Wife's request for a forced buy-out option and insisting on an in-kind distribution which leaves Wife powerless and chained to a continuing economic relationship with her former spouse. Wife proposed her deferral of distribution without knowledge

she would receive only thirty-eight percent of the marital estate and possibly anticipated more permanent alimony than she in fact received. We think a much more reasoned analysis is required in these circumstances concerning the decision to make an in-kind distribution when Wife inadequately is protected without at least possessing the option of dissenter's rights expanded beyond the specified situations in which dissenting rights apply set forth in the Associations Code. *See* 15 Pa.C.S. § 1571. Accordingly, we remand to the trial court both to re-evaluate and to substantiate its basis for favoring an in-kind distribution and for rejecting Wife's request to be granted the option to compel a buy-out of the closely held stock of Dolby and the Auto Group if circumstances suggest such a course of action.

■ Finally, Wife argues that the trial court erred in not awarding her attorney's fees which became substantial due to Husband's lack of cooperation and failure to provide business financial data in a timely fashion in order to permit an independent valuation of Husband's various businesses. The master specifically noted the increased time, expense, and expert fees that directly resulted from this lack of cooperation. She asserts that to deny her counsel fees in light of this and her unequal award of marital assets is an abuse of discretion.

■ The purpose of a counsel fee award is to enable the more dependent party to litigate the action without being placed at a financial disadvantage. *Sutliff v. Sutliff*, 326 Pa.Super. 496, 474 A.2d 599 (1984). Instantly, Wife has substantial assets in her own name but earns little income with which to pay her own counsel fees. Accordingly, we find Wife has demonstrated actual need for counsel fees in order to remain "on par" in defending her which is the rational for awarding attorney's fees. *See Perlberger v. Perlberger*, 426 Pa.Super. 245, 626 A.2d 1186 (1993); *Kohl v. Kohl*, 387 Pa.Super. 367, 564 A.2d 222 (1989) (purpose of award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties

must be "on par" with one another). We specifically note that in awarding Wife high alimony, the court sought to compensate Wife for the lack of liquid assets and the inability of Husband's companies to borrow sufficient funds to finance a buy-out of her stock as part of equitable distribution. Consequently, we conclude it is inequitable to require these same funds to be used to pay Wife's counsel fees. Accordingly, we remand to the trial court to award Wife counsel fees.

Decree affirmed in part and vacated and remanded in part. Jurisdiction relinquished.