J. A03042/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| AMARYLLIS MARTINEZ, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| IVAN R. MARTINEZ SR. | : | |
| | : | No. 314 MDA 2014 |

Appeal from the Order Entered January 23, 2014
In the Court of Common Pleas of Berks County
Civil Division No(s).: 06-11171#1

| | | |
|---|---|---|
| AMARYLLIS MARTINEZ, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| IVAN R. MARTINEZ SR. | : | |
| | : | |
| Appellant | : | No. 416 MDA 2014 |

Appeal from the Order Entered January 23, 2014
In the Court of Common Pleas of Berks County
Civil Division No(s).: 06-11171(#1)

BEFORE: MUNDY, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED JULY 21, 2015**

In this protracted divorce matter, Amaryllis Martinez ("Wife") and Ivan

R. Martinez, Sr. ("Husband") cross appeal from the order entered in the

Berks County Court of Common Pleas effecting the equitable distribution of

---

[*] Former Justice specially assigned to the Superior Court.

the parties' marital estate. Wife challenges the trial court's: (1) valuation of the parties' marital residence and rental property; (2) distribution of the parties' pensions; (3) division of the marital estate on a 50/50 basis; and (4) refusal to award her counsel's fees. Husband challenges the court's: (1) designation of a truck as marital property; (2) alleged failure to consider the tax consequences related to the distribution of his pension; and (3) inclusion of his post-separation contributions to his pension in the marital estate. We deny relief on all claims and thus affirm the trial court's order. Furthermore, we deny Wife's motion to dismiss Husband's reply brief.

We summarize the general facts and procedural history of this equitable distribution case, deferring details of the court's distribution award to our discussion, *infra*, of the parties' issues on appeal. Husband and Wife married in 1988. They separated almost eighteen years later, on September 17, 2006.[1] We note that at that time, Husband was forty-one years old and Wife was forty. The parties' two children, who are now emancipated, remained with Husband in the marital home. In addition to the marital residence, the parties also jointly owned a rental property. Wife filed a divorce complaint on September 22, 2006.

"During the marriage, Husband was employed as a City of Reading Police Officer." Decree at 9. After the parties separated, Husband

---

[1] The trial court also noted "Wife filed for bankruptcy after the date of separation." Trial Ct. Findings of Fact, Conclusions of Law, Discussion & Decree, 1/23/14 ("Decree"), at 1.

purchased additional years of service and retired on January 19, 2010, with a total of twenty-four years of service. He immediately began to receive pension payments, now in the amount of $4,478 per month. He also began full-time employment as a detective with the Berks County District Attorney's office. "Throughout the marriage, and continuing until the present, Wife is employed by the United States Probation and Parole Service." *Id.* at 9. She has a federal "FERS" pension, as well as a federal Thrift Saving Plan ("TSP"). Both the master and the trial court noted the particular difficulty in this case: "how to equitably offset Wife's pension, which is not in pay status, against Husband's pension, which is in pay status." Decree at 15; *see also* Report & Recommendation of Divorce Master, 12/11/12 ("Master's Report"), at 9 (unpaginated).

The parties appeared for a hearing before divorce master Patricia Frankel on May 11, 2011. At that time, the parties had been separated for more than four years. Master Frankel issued an initial report and recommendation on July 18, 2011. Both parties filed exceptions and appeared for oral argument before the trial court.

On February 22, 2012, the court entered a decree granting a divorce and denying in part and granting in part the parties' exceptions. The court distributed the marital estate and liabilities on a 50/50 basis, listing specific items and the parties' pensions, all with assigned values. Both parties sought reconsideration. On March 27th, the court granted reconsideration

and remanded to the divorce master for an evidentiary hearing to make specific determinations with respect to the value of the parties' pensions.[2]

On remand, this case was reassigned to divorce master Louis Shucker, as Master Frankel had retired. In his report, Master Shucker noted the court's February 22, 2012 order "mandated that the assets and liabilities be divided equally, *i.e.*, '50/50,'" "listed the assets to be distributed to each party and assigned a value to each asset." Master's Report at 10. The master thus reasoned he was precluded from altering "the schedule of distribution or the values assigned to each asset except to the extent it may conform with the Court's Order . . . to resolve certain issues involving the parties' pension interests." *Id.*

On November 26, 2012, Master Shucker conducted a hearing. In *lieu* of taking further evidence, however, he had directed the parties to prepare proposed findings of fact, conclusions of law, and a proposed decree. To avoid the expense of producing their experts, the parties agreed to a number of stipulations concerning the total values of their pensions, the coverture fractions[3] to be applied, and the marital portions of their pensions.

---

[2] Subsequent to seeking reconsideration, Wife also filed a notice of appeal to this Court. On April 18, 2012, this Court struck the appeal in light of the trial court's express grant of reconsideration. *See* Pa.R.A.P. 1701(b)(3) ("A timely order granting reconsideration . . . shall render inoperative any such notice of appeal . . . .").

[3] This Court has explained:

As the trial court noted, "Despite the numerous stipulations of fact upon which the Master's Report and Recommendations was premised, the parties again each filed Exceptions."[4] Decree at 7. The trial court again heard oral argument on December 16, 2013, and on January 23, 2014, entered the underlying final decree. Both parties timely appealed and complied with the court's order to file Pa.R.A.P. 1925(b) statements of errors complained of on appeal.

Preliminarily, we note the following principles:

> Our standard of review in assessing the propriety of a marital property distribution is whether the trial

---

By statute, a coverture fraction[FN] shall be applied to a defined benefit retirement plan when the court equitably divides such a plan. *See* 23 Pa.C.S.A. § 3501(c). Generally, a coverture fraction is not applied to other types of marital assets. . . .

---

[FN] A coverture fraction is defined as follows: "[t]he denominator of the coverture fraction shall be the number of months the employee spouse worked to earn the total benefit [or the total accrued benefit as determined as close as possible to the time of trial] and the numerator shall be the number of such months during which the parties were married and not finally separated," depending upon whether immediate or deferred distribution of the plan is chosen. 23 Pa.C.S.A. § 3501(c).

*Dean v. Dean*, 98 A.3d 637, 641 & n.2 (Pa. Super. 2014).

[4] Wife's exceptions were identical to her claims in the instant appeal—that the court erred in valuing the marital residence and rental property with their 2006 appraisal values, reducing the value of the real estate by presumed expenses of sale, not awarding her more than 50% of the marital estate, and declining to award her counsel fees.

court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.

"When reviewing an award of equitable distribution, "we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights."

*Smith v. Smith*, 904 A.2d 15, 18 (Pa. Super. 2006) (citations omitted).

"The Divorce Code does not specify a particular method of valuing assets." Thus, "[t]he trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties." When "determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property." . . .

*Childress v. Bogosian*, 12 A.3d 448, 456 (Pa. Super. 2011) (citations omitted).

Wife's first issue on appeal is subdivided into three discrete issues: the trial court's valuation of the marital estate, the valuation of rental property, and the court's deduction of 7% from these values. For ease of disposition, we summarize the following facts and procedural history. "Wife vacated the marital residence on September 17, 2006," the date of separation. Decree at 1. Wife did not contribute to the maintenance or upkeep of the marital residence, and on November 27, 2006, the parties transferred title from both parties to Husband only. At that time, the home was appraised at

$235,000. The home was appraised again in October of 2009 at $210,000.[5]

At the May 11, 2011 master hearing, an appraiser testified the current market value of the house was $196,500. The trial court applied this last amount as the market value of the marital residence.[6]

The parties also jointly owned a rental property in Reading. Since separation, "Husband has had sole possession, use, control and responsibility for [its] management and maintenance." *Id.* at 10. However, "[a]t the time of the 2011 Master's hearing, there had been no rental income derived . . . since the date of separation." *Id.* The trial court noted the market value of this property likewise declined over time.[7] At the May 2011 master's hearing, the appraiser testified the market value was $36,000, and the trial court applied this value in its distribution order.[8] *Id.* Additionally, the court reduced the market values of both properties by 7% to account for

---

[5] The house was also appraised one month earlier, in September of 2009, at $206,000. Decree at 9.

[6] The trial court further deducted the amount of the outstanding mortgage, $162,289.15. Decree at 9.

[7] Wife states "[t]he parties did not offer valuations of the premises as of the date of separation." Wife's Brief at 3. Instead, Wife maintains, in October 2009, her appraiser valued the rental property at $64,000, and in September 2009, Husband's appraiser valued it at $47,000.

[8] In its initial distribution order of February 22, 2012, the trial court assigned a market value of $47,000 to the rental property. Husband filed an exception and the court granted relief, stating $47,000 was a prior appraisal amount. Decree at 10 n.7. The court then applied the value presented at the May 2011 master's hearing, finding it was "more equitable" to use the most recent value. *Id.*

the costs of sale.

On appeal, Wife first argues that with respect to the marital residence, the court abused its discretion in not applying the appraisal value at the time it was transferred to Husband only. While Wife concedes "there is, generally, a preference for valuing assets [at] or near the time of distribution," she avers the court should "select a date which works economic justice between the parties." Wife's Brief at 2 (quoting **Fishman v. Fishman**, 805 A.2d 576, 579 (Pa. Super. 2002)). Wife contends that "[f]rom November 2006 forward Husband not only had possession, use and control of the premises he had ownership," and thus "the value and the equity as of that date . . . should control as [it] works economic justice between the parties." Wife's Brief at 2.

Wife likewise argues the court erred in valuing the rental property with the 2011 market value, $36,000. She asserts the court should have instead accepted the prior master's valuation of $55,000, which was the average of the parties' 2009 appraisals of $47,000 and $64,000. Wife also cites the prior master's rationale—which she concedes pertained to the valuation of the marital residence and not the rental property—that the proper valuation date was the fall of 2009 when both parties had obtained appraisals, "the market had already started to decline," and Husband had the "opportunity to dispose of [the property] had he so desired." **Id.** at 4 & n.7. Finally, Wife avers Husband had sole possession and use of the rental property, collected

all rents, "and obtained any and all tax advantages relating thereto (including depreciation)." ***Id.*** at 3. We find no relief is due.

This Court has stated:

> The Pennsylvania Divorce Code does not specify what date marital property should be valued for purposes of equitable distribution. Although the Code establishes the date of separation as the demarcation point to identify marital property, it does not specify the time when marital assets must be valued. Absent a specific guideline, trial courts are given discretion to choose a date of valuation which best provides for "economic justice" between the parties. "To recognize a specific valuation date as a matter of law would deprive the trial court of the necessary discretion required to effectuate economic justice." However, "equitable results will most likely flow from providing the court with the most recent information available . . . ."

> The Supreme Court of Pennsylvania . . . held:

>> It is implicit, however, in the statutory provisions governing equitable distribution that a valuation date reasonably proximate to the date of distribution must, in the usual case, be utilized.

> Despite a preference for valuing marital assets at or near the time of distribution, there may be circumstances where it is more appropriate to value marital assets as of the date of separation. For example, in situations where one spouse consumes or disposes of marital assets following separation without the other spouse's consent, it may be more equitable to value the marital asset as of the date of separation. ***See*** [***Sutliff v. Sutliff***, 543 A.2d 534 (Pa. 1988).] Likewise, when valuing a closely held business which is largely controlled by one spouse during the period of separation, it may be appropriate to value the business as of the date of separation. ***See Benson v. Benson***, [624 A.2d 644 (Pa. 1993),] ***McNaughton v. McNaughton***, [603 A.2d 646 (Pa. 1992).]

***Smith v. Smith***, 653 A.2d 1259, 1270-71 (Pa. Super. 1995) (some citations

omitted).

Wife cites the statement in **Fishman** that, in valuating marital assets, a court should select a date which works economic justice between the parties. Wife's Brief at 2. In **Fishman**, the husband worked at an accounting firm called ZA during the marriage, and three years **after** separation, he and others "purchased the health care consulting section of ZA and created" ZAC. **Fishman**, 805 A.2d at 578. "The trial court determined [the] husband's interest in ZA was a marital asset, but not his interest in ZAC 'for the simple reason that it was acquired after the date of separation.'" **Id.** In distributing the marital estate, the trial court awarded the wife, *inter alia*, 85% of the husband's interest in ZA at the time of separation. **Id.** at 577.

On appeal to this Court, the wife "argue[d] the trial court erred by utilizing the date of separation to determine the value of the marital property rather than the date of distribution." **Id.** at 578. This Court noted:

> "Despite a preference for valuing marital assets at or near the time of distribution, there may be circumstances where it is more appropriate to value marital assets as of the date of separation." [**Smith**, 653 A.2d at 1270.] "The lower court's objective in selecting a date for the valuation of marital assets is to select a date which works economic justice between the parties." [**McNaughton**, 603 A.2d at 649.]

**Fishman**, 805 A.2d at 579. This Court then reasoned, "It would be impossible to use the date of distribution to value [the] husband's interest in ZA as it no longer existed." **Id.** This Court thus affirmed the trial court's

decision. *Id.*

In the instant matter, the trial court assigned to the marital residence the market value presented at the May 2011 master's hearing, $196,500. We note this appraisal post-dated separation by four years and eight months, and was lower than the market value at the time of separation, which was $235,000. The court noted the principles in *Smith* that in determining the valuation date of a marital asset, it should "choose a date of valuation which best works economic justice between the parties," and in *Sutliff* that "the law appears to favor a valuation date closest to the date of distribution." Decree at 12. It then reasoned:

> We feel both the Divorce Code and the relevant case law allow the Court to utilize the valuations made closest to the date of distribution, which, in this case, would be the appraised value testified to by the appraiser at the 2011 Master's hearing. We do not believe the transfer of title between the parties on an earlier date impacts this analysis, as title is not controlling in equitable distribution.

*Id.* at 23.

On appeal, Wife does not address the trial court's rationale, but instead repeats her argument that at the time of separation, Husband had sole possession, use, and, subsequently, sole ownership of the home. In light of the decisional law discussed above, we disagree with Wife. The fact of Husband's continued use and possession of the marital home is not a circumstance of the ilk contemplated in *Fishman*, *Sutliff*, or *Benson*. *See Fishman*, 805 A.2d at 579; *Smith*, 653 A.2d at 1270-71.

We similarly find no relief due with respect to the market value of the rental property. Wife's claim that Husband collected rents from the rental property contradicts the trial court's finding that there was no rental income between the time of separation and the May 2011 master's hearing. **See** Decree at 9. Furthermore, Wife's argument ignores the parties' stipulation that post separation, Husband had sole responsibility for the property. Stipulation of Facts, 4/15/13, at ¶ 24. We find no abuse of discretion in the court's assigning the values closest to the time of distribution to both the marital residence and rental property. **See Smith**, 653 A.2d at 1270-71.

The last sub-claim in Wife's first issue is that the trial "[c]ourt erred in deducting . . . presumed expenses" of 7% as costs of sales from the values of the marital residence and rental property. Wife's Brief at 7. Wife alleges "there was no testimony or evidence of such 'costs of sale' in the record" and "there is no 'standard cost of sale.'" **Id.** at 5. She avers "it is axiomatic that there **must** be evidence of record upon which the Court bares [sic] its findings." **Id.** at 6. Wife also challenges the trial court's reliance on **Ziegler v. Ziegler**, 530 A.2d 445 (Pa. Super. 1987), and contends **Ziegler** "rejected a hard and fast rule" on costs of sale and stated "a commission of seven percent . . . is by no means universal." Wife's Brief at 7. We find no relief is due.

Section 3502 of the Divorce Code, "Equitable division of marital property," provides, *inter alia*:

> **(a) General rule.—** . . . Factors which are relevant to the equitable division of marital property include the following:
>
>       \*      \*      \*
>
> (10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

23 Pa.C.S. § 3502(a)(10.2).

In **Ziegler**, the wife sought to sell the marital home immediately, argued "the value of the residence should be reduced by expenses of sale to reflect its true value to her . . . for purposes of equitable distribution," and requested the Superior Court "to establish a rule that, in all cases where the recipient of a marital residence intends to sell it immediately, its value for equitable distribution should be reduced by a seven percent realtor's commission and a one percent realty transfer tax." **Ziegler**, 530 A.2d at 447. This Court held:

> We decline to adopt such a rule for all cases, or even for all cases in which an immediate sale is intended. First, such an intention is not easily susceptible of proof. More importantly, the proper amount to deduct for costs of sale would be a matter of speculation. Although it is common practice to employ the services of a realtor in selling a home, it is not uncommon for an owner to undertake a sale without the assistance of a realtor. In the latter instances, no commission is involved. Moreover, although a commission of seven percent is common, it is by no means universal.
>
> Adjustment in the value of a residence for expenses associated with a contemplated sale may be an appropriate consideration in some equitable distribution cases. We neither forbid nor require the practice. In this

> case, however, we hold that the trial court's refusal to deduct the costs of sale was a proper exercise of its discretion. The record does not establish the expenses incident to the contemplated sale with sufficient specificity to require that such expenses be deducted.

*Id.*

In the case *sub judice*, the trial court reasoned: "[W]e believe it is permissible to reduce [the] appraised values [of the real estate] by 7%, the standard cost of sale, even where there is no sale contemplated, as set forth in 23 Pa.C.S.A. § 3502[(a)](10.2)." Decree at 23. We agree with Wife that in **Ziegler**, this Court rejected a *per se* rule for deducting costs of sale from the value of marital assets. **See Ziegler**, 530 A.2d at 447. However, Wife ignores Subsection 3502(a)(10.2), which allows a court to consider the expense of sale, even if that expense is not immediate or certain. **See** 23 Pa.C.S. § 3502(a)(10.2). We decline to find the court abused its discretion in this regard.

Wife's second issue on appeal concerns the court's division of the parties' pension benefits. The master calculated the marital portion of Husband's monthly pension payment as $2,535, and, assuming the parties each received 50% of the marital estate, recommended that Husband pay Wife $1,289 per month until Wife reaches age 59 ½, and thereafter $759 per month. The court applied a different methodology to calculate the marital portion of Husband's monthly pension payments, but nevertheless arrived at the amount of $2,537, $2 more than the master's amount. The

court ordered Husband to pay Wife $1,066 per month until Wife reached age 59 ½, and nothing more thereafter.

We summarize the parties' pensions and then compare the master's and court's calculations. Prior to separation, Husband worked for 15.97 years with the Reading Police department, and following separation, "continued to work for an additional 3.3 years" before retiring on January 19, 2010. Decree at 10. Husband purchased an additional 4.75 years of service for $20,000,[9] resulting in a total of 24.065 years of service. *Id.* at 11, 16. Furthermore, at the time of separation in September 2006 Husband's pension payment was $2,033 per month, but "by the time he retired 3.3 years later in January, 2010, [it] had grown to $4,478[.]"[10] *Id.* at 16. Wife, who is a federal employee, is currently working and has a FERS pension and a federal Thrift Saving Plan.

To avoid the expense of producing their experts at the May 2011 master's hearing, the parties stipulated to the following. The present value

---

[9] "There [was] no contention that this $20,000 is a marital asset." Decree at 16.

[10] The trial court noted, "Throughout the course of this litigation, the present value of Husband's pension has been determined to be as little as $475,000 to as much as over [$1,000,000.] In addition to being the largest asset, it is also subject to several factors which may or may not have a compound effect on its value." Decree at 15.

of Wife's TSP was $70,620.[11] "[R]ather than attempting to calculate the present value of . . . Wife's FERS and Husband's police pension[,]" the parties agreed to utilize the amount of their monthly benefits." Master's Report at 3. "[T]he monthly benefit to be assigned to Wife's FERS pension is $1,580," and the marital component thereof shall be $1,017.[12] *Id.* at 4. "Husband's pension went into pay status as of January 20, 2010," his monthly benefit is $4,478, and the marital portion thereof is $2,917.[13] *Id.* at 3-4.

Master Shucker set forth the following reasoning in his report. He considered the marital portion of Husband's monthly police pension payment, which, as stated above, the parties stipulated would be $2,917. The master noted Husband's employment with the Reading Police Department did not include Social Security benefits, and thus found Husband

---

[11] This amount for Wife's TSP was the average of Husband's expert's valuation of $76,281 and Wife's expert's valuation of $64,960. Master's Report at 3.

[12] To calculate the marital portion of Wife's future FERS monthly payments, the parties' experts applied different coverture fractions: 0.6475 and 0.6131. While the master's report did not specify whose expert applied which fraction, it stated these fractions yielded amounts of $1,065 and $968, and that the parties agreed to use the average of these two amounts, $1,017. *Id.* at 4.

[13] The parties' experts likewise disagreed on the coverture fraction to be applied to Husband's police pension payments. Husband's expert applied 0.6473 and Wife's expert applied 0.6554. *Id.* at 4. "The parties agreed to accept the average value of $2,917[.]" *Id.*

was entitled to a "Social Security offset" of 13.1% pursuant to **Cornbleth v.**

**Cornbleth**, 580 A.2d 369 (Pa. Super. 1990). Master's Report at 9. The

master reduced the $2,917 figure by 13.1% and arrived at a marital asset

amount of $2,535 monthly. **Id.**

The master further noted in his report that Husband had already

received, from January 20, 2010 to November 20, 2012, $154,012 of police

pension payments. **Id.** at 4. The master applied the average of the

coverture fractions utilized by the parties' experts and initially determined

the marital portion was $100,313. **Id.** at 5. The master then applied the

13.1% Social Security offset and calculated the marital portion was

$87,369.[14] **Id.** at 9.

The master further reasoned:

> There is an additional complicating factor that must be addressed. Wife will not begin to receive her pension or her social security benefit until some time in the future while Husband's police pension is currently in pay status. If, as the Master feels constrained to conclude, the parties shall divide their assets on a 50/50% basis then Wife would be entitled not only to one half of the marital portion of Husband's pension from the date of pay status in January 2010, but also 50% of the marital portion of his pension on an ongoing basis.
>
> However, this entitlement should only continue until Wife begins to receive her pension because at such time as Wife's pension is in pay status Husband is similarly entitled to one half of Wife's pension. Of course, it is unknown at what age Wife will retire, but she is entitled to draw on her

---

[14] We, however, calculate 13.1% of $100,313 as $87,171.99, or approximately $87,172.

pension when she reaches the age of 59 ½ and the Master will utilize that age[ ] as Wife's retirement age.

Therefore, the Master will conclude that there must be a "two-tiered" distribution with regard to the parties' pensions. From January 20, 2010 until Wife reaches the age of 59 [½], Wife is entitled to half of the marital portion of Husband's pension or $1,289[ ] per month. . . . However, at such time as Wife is 59 ½ she will begin to receive or will be entitled to receive her pension and her pension must be factored into the amount Husband is obligated to pay.

The Master has calculated that equally dividing the sum of both pensions results in an obligation from Husband to Wife in the amount of $759[ ] per month.[15]

*Id.* at 9-10.

The trial court reviewed the master's recommendations and awarded equitable distribution as follows. It first addressed the post-separation, "regular contributions" to Husband's pension plan—those made in the 3.3 years after separation and before retirement from the Reading Police Department. Decree at 17. The court held the contributions were marital property pursuant to *Smith v. Smith*, 938 A.2d 246 (Pa. 2007), that they were "postseparation monetary contributions" under Section 3501(c) of the

---

[15] The Master arrived at the $759 sum as follows. Despite his finding at page 9 of his report that the marital portion of Husband's police pension was $2,535, on page 10 he states it is $2,579. The master then added this amount to the marital portion of Wife's pension as follows: $2,579 + $1,017 = $3,596. The master divided $3,596 by 2 and arrived at a quotient of $1,776. We, however, calculate half of $3,596 to be $1,798. Nevertheless, the master then subtracted the marital portion of Wife's pension from that amount ($1,776 - $1,017 = $759). Master's Report at 10.

Divorce Code,[16] and thus the coverture fraction applies to them.

The court next considered the fact "that the base salary upon which Husband's current pension benefit is calculated was higher in 2010 when he retired than it was in 2006 when the parties separated." *Id.* The court held, again under *Smith*, 938 A.2d 246, the master correctly applied the coverture fraction to the full amount of Husband's current monthly benefit, "even though the value has increase[d] due to years of post-separation employment." Decree at 17-18.

Next, the court considered Husband's post-separation purchase of 4.75 years of additional service. The trial court noted there was "no contention that [the $20,000 used to purchase the years] is a marital asset." *Id.* at 16. The court held that under *Smith*, 938 A.2d 246, "the portion of Husband's pension attributable to his purchase of 4.75 years of service is excluded from the marital estate because it arose from a postseparation monetary contribution[ ] **over and above any regular deductions**." Decree at 18 (emphasis added). The court thus "exclude[d] the 4.75 purchased years from Husband's total years of service on which his pension is calculated." *Id.* The court applied "the coverture fraction to Husband's current monthly pension benefit, because the number of years Husband earned his pension

---

[16] Subsection 3501(c) provides that the coverture fraction shall apply to "all postseparation enhancements except for enhancements arising from postseparation monetary contributions made by the employee spouse[.]" 23 Pa.C.S. § 3501(c).

during the marriage is divided by the total number of years of service, which includes the purchased years." *Id.* at 18-19. The court thus held the Master correctly "utiliz[ed] the coverture fraction to determine the marital share of Husband's pension." *Id.* at 19.

The court then found a deferred offset distribution was required, as "the marital estate is insufficient to allow for an immediate offset of assets." *Id.* It then reasoned:

> This creates a serious inequity where Husband's pension is in pay status, but Wife's will not be for years to come. Therefore, we will either be reducing the amount Husband must pay to Wife based on money she is not yet receiving, or Husband will be forced to pay the full amount without any offset, despite the fact that Wife's pension has an established current value, more than 60% of which is marital property. Neither result seems equitable.

*Id.*

The court summarized Master Shucker's methodology as:

> utiliz[ing] the current values of the parties' pensions, appl[ying] the agreed-upon coverture fraction, . . . determin[ing] the marital share of Husband's pension was $2,917 per month[,] then reduc[ing] that amount by a 13% Social Security offset, and determin[ing] that Wife's share (50%) of Husband's monthly pension payment was $1,289 per month, which Husband should pay . . . until Wife reaches 59 ½, after which that amount is reduced to $759 per month, reflecting an offset of the marital portion of Wife's pension against the marital portion of Husband's pension.[17]

---

[17] The court also rejected the methodology of the first master, Master Frankel, of "revert[ing] to the value of the parties' pensions as of the date of separation." Decree at 19. The court reasoned "this method of valuing and

- 20 -

*Id.* at 20. As stated above, Master Shucker ultimately found the marital portion of Husband's monthly pension as $2,535. Master's Report at 9.

The trial court, however, found this methodology "highly inequitable":

> [U]nder this scenario, Husband is required to pay Wife 100% of [her] share of the marital portion of his pension for more than ten years before any of the current value of Wife's pension is applied towards Husband's monthly payments.

Decree at 20.

The trial court instead effected the following distribution. The court first applied a 13% Social Security offset[18] to Husband's monthly pension payment of $4,478, resulting in $3,896. The court applied the average of the parties' proposed coverture fractions, 0.65135. "This coverture fraction was obtained by dividing the number of years [H]usband accrued pension benefits . . . through the date of the parties' separation (15.97 years) by the total number of years of service upon which Husband's current monthly benefit is calculated (24.065 years).[ ] This fraction accounts for the 4.75 years [H]usband purchased, because it includes them in the calculation of the total number of years of service but excludes them from the marital estate." Decree at 20-21. The application of the 0.65135 coverture fraction

distributing the parties' pensions does not resolve the dilemma of how to equitably offset Wife's pensions against Husband's." *Id.*

[18] The trial court noted neither party filed an exception to the master's application of a 13% Social Security offset.

to $3,896 "results in a marital portion of Husband's monthly pension of $2,537.46.[ ]"[19] *Id.* at 21. This amount is approximately $2.50 more than the master's final calculation of $2,535. *See* Master's Report at 9.

The court next considered Wife's FERS pension, which the parties agreed had a current monthly value of $1,580.[20] The court reasoned:

> As a practical matter, we cannot credit Wife the full amount of the present value of her FERS pension, because she is not yet receiving it. Nor can we equitably require Husband to pay to Wife 50% of the marital portion of his pension, without the benefit of any offset, where the parties' experts submit that 61 to 65%[ ] of Wife's pension benefits are marital property.
>
> Accordingly, we feel it necessary to offset the marital portions of the parties' pensions, but to reduce the value of Wife's monthly pension to reflect that fact that she is not yet receiving payments. . . .
>
> *     *     *
>
> In the interest of fairness, we will attribute only 40% of the marital portion of the current value (as stipulated to by the parties) of Wife's FERS pension to Wife for purposes of calculating the amount to offset against the [marital] portion of Husband's pension. Further, because 100% of the marital portion of Wife's FERS pension will more than offset the [marital] portion of Husband's pension when she retires, upon Wife reaching the age of 59 ½, Husband's obligation to pay Wife a portion of his pension shall terminate at that time. Therefore, we will order Husband to pay Wife $1,066[FN] per month until Wife reaches the age of 59 ½.

---

[19] We calculate the product of $3,896 and 0.65135 to be $2,537.66.

[20] The court reasoned that because Wife will be entitled to receive Social Security benefits, there will be no Social Security offset. Decree at 21.

- 22 -

[FN] $1,269 – (($1,017 x .4)/2) = $1,065.60.

*Id.* at 22-23. We reiterate the master's recommendation was for Husband to pay $1,289—$223 more than the trial court's award—to Wife monthly until she reached age 59 ½, and thereafter $759 monthly.

Having reviewed the master's recommendation and the trial court's modification thereof, we now consider Wife's claims on appeal. For ease of disposition, we address each discrete argument *seriatim*.

Wife first alleges the trial court wrongly asserted the parties: (1) "declined or were unable to provide the amount of [H]usband's current pension that is attributable solely to his post-separation purchase . . . or the increase of his pension due to post separation contributions;" and (2) "did not address how to determine an equitable manner in which to offset the pension, where Husband . . . has been receiving his pension distribution for nearly four years but Wife will not receive a check for more than a decade." Wife's Brief at 12-13. She avers that instead, the parties' stipulation and Master Shucker's report "accomplished what the Court deemed lacking." *Id.* at 13.

However, in support of this latter statement, Wife cites, without further discussion, the court's Finding of Fact #38. *See id.* at 13 (citing Decree at 11). That finding states, "The parties stipulated[ ] that the 'monthly marital portion of [Husband's] City of Reading pension benefit is $2,917 based on the average of the coverture fractions used by the parties'

respective experts.'" Decree at 11. We disagree that this stipulation—providing simply the amount of the marital portion of Husband's monthly pension payment—resolves the portion thereof to be attributable to Husband's post-separation purchase of additional years of service or how to offset the pension when Wife will not begin receiving her pension for at least a decade. Accordingly, we find this argument meritless.

Wife next asserts the court's analysis "is an arbitrary, illogical and legally unsupportable outcome which is utterly contrary to economic justice." Wife's Brief at 14. Her immediately ensuing discussion is that she entitled to all of the escrow—which "should be" $20,280—Husband has paid pursuant to a February 2013 order.[21] **Id.** at 14-15. First, we deem this claim peripheral to the underlying issue—the methodology of distributing the parties' pensions. We defer this claim to the trial court, who will release the escrow funds when this appeal concludes and the parties' marital estate is distributed.

---

[21] In support of this claim, Wife reasons: (1) Husband "received a lump sum of pension benefits of $10,691.28 for the period January 20, 2010 through March 2010;" (2) "[b]ased upon the Court's finding that the monthly marital portion of said benefit is $2,537.46 then of that sum $6,057.14 is marital" property; (3) Husband received 35 payments of $4,478.48 each from April 2010 through February 2013, "mean[ing] the marital portion received was $88,811.10;" (4) "[t]hus, the total marital sum received and retained by [Husband] through February 2013 was $94,868.24;" (5) one half of that amount is $47,434.12; and (6) "[e]rgo, the total pension benefit received by [Husband] from date of retirement . . . through February 2013 [ ] was $167,448.58 and the total non-marital portion retained by him and not subject to distribution is $72,580.34." Wife's Brief at 14.

Next, Wife contends the court "reduce[d her] entitlement to a present benefit by a percentage of a future benefit which will not be received (if ever) more than a decade from now" and "that reduced benefit will be eliminated altogether once [she] attains the age of 59-1/2." *Id.* at 15. Wife further avers: (1) the court "fashioned [its] result out of whole cloth, or in a sense *exnihilo*[,] presumably all for a concern for fairness to" Husband; and (2) "[t]here is no statutory or case law support for the result conjured by the Lower Court." *Id.* Wife also claims the court's reliance on *DeMarco v. DeMarco*, 787 A.2d 1072 (Pa. Super. 2001), was misplaced, as follows:

> The one cased cited by the [trial] Court, *DeMarco* . . . actually mitigates against the Court's order.
>
> In *DeMarco*, *supra*, the Superior Court noted that the Court arbitrarily chose a retirement date for the Husband in that case and that it ignored the fact that he continued to work and that the Court's selection was not supported by the evidence of record.
>
> What the Lower Court has done in this case was compare pineapples which had fallen to the ground with un-ripened bananas which are not yet consumable.

Wife's Brief at 15. She concludes, "Even a rudimentary mathematical calculation can readily indicate that this result obliterates the Court's declaration of an equal distribution of the marital estate and awards [Husband] a grossly greater portion thereof." *Id.* at 16. Wife requests this Court **not** to "remand this to the Lower Court which has already grossly bungled the determination of this matter." *Id.* Wife "strongly suggests" that this Court instead enter our own distribution order awarding her: (1)

one half of the marital portion of Husband's pension—either $1,235 as calculated by Master Shucker or $1,237 as calculated by the trial court; (2) all of the escrowed funds; (3) a portion of Husband's pension "until either age 59-1/2 or her actual retirement date; and (4) thereafter $759 per month. *Id.* at 16-17. We find no relief is due.

What Wife essentially desires is the distribution recommended by Master Shucker, with an amendment that her share of Husband's pension not automatically decrease at age 59 ½, but instead when she retires. A careful review of her arguments, however, reveals only sweeping, conclusory allegations of error, *see* Wife's Brief at 14 ("arbitrary, illogical[,] legally unsupportable, [and] utterly contrary to economic justice"), along with a one-sentence, incomplete synopsis of *DeMarco*. That Wife disagrees with the court's conclusions is clear; however, we reject her characterization of the court's analysis as "fashioned . . . out of whole cloth" or *ex nihilo*. *See* Wife's Brief at 15. Wife ignores the court's extensive reasoning, spanning nine pages of its opinion, which included: (1) acknowledgement of the particular difficulty in this case—that Husband already began receiving pension payments in 2010 yet Wife will not receive her pension until an undetermined retirement date in the distant future; (2) consideration of various distribution schemes and how they would be inequitable to either party; (3) discussion of *DeMarco*, including concession that the opinion was "not directly on point, but [the court] found little other guidance with respect

to how to equitably distribution pensions between two parties where one pension is in pay status and the other is not;" (4) and a detailed discussion of its calculation of the marital portion of Husband's pension and future offset by Wife's pension. **See** Decree at 5, 15-23. Thus, we find meritless Wife's claim that the court offered absolutely no basis for its decision.

In its opinion, the trial court specifically addressed Wife's claim that the court "'arbitrarily' reduced or off-set her share of Husband's . . . Pension Benefit based on the value of [her] FERS benefit." Trial Ct. Op., 5/8/14, at 9. The court reiterated its determination "that it would be inequitable to allow Wife to collect her full share of Husband's Pension Benefit when she has her own pension benefit, which, if it were in pay status, would offset a portion of the amount to which she is entitled of Husband's pension," yet "it would also be inequitable to offset the full amount of [her] monthly pension benefit as she does not yet receive any payments." **Id.** A careful review of Wife's argument reveals no substantive argument as to why the master's calculation is superior, or legally correct, over the trial court's reasoning. Our review of the trial court's rationale reveals no abuse of discretion. **See Smith**, 904 A.2d at 18.

Wife's final claim is that the court erred in not awarding her more than 50% of the marital estate or counsel fees. With respect to the division of the marital estate, Wife cites: (1) the trial court's alleged abuse of discretion in valuating the real estate and distributing the parties' pensions; (2) that

Husband "has always had a higher earning capacity than [Wife] throughout the marriage; (3) that when Husband "retired he left his employment as a police officer to earn $25,000.00-$30,000.00 per year less;" (4) she would only receive $15,228 per year of retirement benefits while Husband will receive more than two and a half times more, $38,2517.36 per year, in retirement benefits;[22] (5) Husband's "income is growing annually while [Wife's] is not" and Husband "is accruing County Retirement Benefits;" (6) Husband has "rent producing property which provides him with both income and tax advantages;" and (7) Husband is thus "in a demonstrably superior position financially." Wife's Brief at 18-19. We find no relief is due.

Section 3502(a) of the Divorce Code provides:

> **(a) General rule.**—Upon the request of either party . . . the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. . . . Factors which are relevant to the equitable division of marital property include the following:
>
> (1) The length of the marriage.
>
> (2) Any prior marriage of either party.
>
> (3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

---

[22] Wife computes she will receive $1,269 per month while Husband will receive $3,209.78 per month. Wife's Brief at 18.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502(a)(1)-(11).

"[T]he trial court has the authority to divide the award as the equities presented in the particular case may require." *Lee v. Lee*, 978 A.2d 380, 383 (Pa. Super. 2009) (citation omitted).

We do not evaluate the propriety of the distribution order

upon our agreement with the court['s] actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole, in light of the court's overall application of the [23 Pa.C.S.A. § 3502(a)] factors [for consideration in awarding equitable distribution]. If we fail to find an abuse of discretion, the [o]rder must stand.

*Id.* (citation omitted).

Master Shucker recommended a 50/50 division of the marital property.

The trial addressed the Section 3502(a) factors in its decree and agreed:

This was a [seventeen] year marriage that resulted in two children. Both parties were employed for the duration of the marriage in their current professions; neither gave up their employment to stay home and care for children or family members. The parties are almost the same age, and both work for the government (he for the County and [she] for the Federal government). They both have pensions: his is a greater amount than hers but she also is entitled to receive Social Security benefits. Both parties contributed to the maintenance and upkeep of the Marital Residence during the marriage, and both contributed to [their] comfortable standard of living[.] At the time of separation, Husband undertook the responsibility of the parties' then-minor children, and did not seek child support from Wife. Wife did not seek alimony from Husband. The parties['] salaries are similar, although Husband has a higher stream of income due to his receipt of his current salary and his pension benefits, but disparity is lessened by the fact that Wife will receive a portion of Husband's monthly pension payments.

Based on all of the foregoing, we believe a 50/50 division of assets is appropriate under the circumstances.

Decree at 24-25.

In its opinion, the trial court addressed Wife's challenge to the overall distribution scheme. With respect to her claim that Husband's pension is

substantially higher than hers, the court noted "Husband's pension increased substantially in value [after] separation," and that Wife is not entitled to half of Husband's entire pension, but rather only half of the marital portion. Trial Ct. Op. at 11. The court also reiterated the marital portion did not include "the amount attributable to Husband's purchase of additional service year[s] (accounting for nearly 20% of the benefit) and the amount attributable to the [13%] Social Security offset." Trial Ct. Op. at 11. The court stated the marital portion is further offset "by a portion of Husband's share of the marital portion of Wife's" FERS benefit. *Id.* On appeal, Wife's argument wholly ignores this reasoning, as well as the fact that upon retirement, she will receive the non-marital portion of her own pension, which presumably will grow as she continues to work, and Social Security. We decline to find an abuse of discretion, and instead hold the court carefully considered how to equitably distribute the marital property. *See Lee*, 978 A.2d at 383.

Finally, we consider Wife's claim that the court erred in denying counsel fees to her. Her argument in sum is:

> No doubt both parties have incurred substantial expense, in no small part due to the Lower Court's mishandling of this matter. However, [Wife's] costs were also increased by the need to Compel Discovery and seek Contempt from [Husband's] non-compliance; matter of record [sic].

> It is submitted that based upon these factors and her need and [Husband's] ability to pay it is not unreasonable for the Court to require [Husband] to pay at least $7,500.00 in counsel fees.

> This is particularly so if the equitable distribution award is not modified as requested and/or skewed in [Husband's] favor.

Wife's Brief at 19. We find no relief is due.

We note the relevant standard of review:

> We will reverse a determination of counsel fees and costs only for an abuse of discretion. The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be "on par" with one another.
>
> *        *        *
>
> Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.

> "Counsel fees are awarded only upon a showing of need." Further, "in determining whether the court has abused its discretion, we do not usurp the court's duty as fact finder."

***Teodorski v. Teodorski***, 857 A.2d 194, 201 (Pa. Super. 2004) (citations omitted).

The trial court denied Wife's request for attorney's fees in light of "all of the reasons set forth in [its decree] regarding the parties' relative financial positions." Decree at 25. After reviewing all of the issues discussed above, we find no abuse of discretion. ***See Teodorski***, 857 A.2d at 201.

We now turn to Husband's cross-appeal. First, he claims the trial court

erred in concluding his Ford F-150 pick-up truck, with a value of $8,310, is a marital asset. He cites his testimony that as of separation in September 2006, he owned two vehicles, a 1984 Ford Ranger and a Volvo, and that he did not purchase the F-150 truck until May of 2008. Husband maintains Wife acknowledged "that the F-150 truck was acquired post-separation." Husband's Brief at 14. Husband acknowledges Section 3501(a)(4), which includes as marital property "property acquired in exchange for marital assets." *Id.* However, he maintains "Wife failed to conduct any inquiry whatsoever into what source of funds, if any, [he] used to acquire this F-150 truck" and "[i]ndeed, the record is silent as to whether [he] borrowed funds . . . to acquire the F-150 truck." *Id.* at 14-15. Finally, Husband observes the court did **not** designate as marital property $4,000 that he received for another marital vehicle, a 1994 Ford Ranger. Husband avers that had the trial "court included the value of this vehicle in the marital estate, [he] would have no cause for a challenge." *Id.* at 15. We find no relief is due.

"Whether the interest is marital property or separate property for purposes of distribution of the marital estate is a matter within the sound discretion of the trial court." *Perlberger v. Perlberger*, 626 A.2d 1186, 1196 (Pa. Super. 1993). As alluded to above, Section 3501(a)(4) provides:

> **(a) General rule.—**As used in this chapter, "marital property" means all property acquired by either party during the marriage and the increase in value of any nonmarital property acquired . . . . However, marital property does **not** include:

\*   \*   \*

> (4) Property acquired after final separation until the date of divorce, except for property acquired in exchange for marital assets.

23 Pa.C.S. 3501(a)(4) (emphasis added).

> "Marital property" is "all property acquired by either party during the marriage, . . ." 23 Pa.C.S. § 3501(a). The presumption of marital property is rebuttable, and property may be established as separate by a preponderance of the evidence. **See** 23 Pa.C.S. § 3501(b)[.] Additionally, assets acquired after separation through the use of marital assets are marital property.

**Perlberger**, 626 A.2d at 1196 (some citations omitted).

In the instant case, the trial court addressed Husband's claim as follows:

> The Ford truck was discussed at the 2011 Master's hearing[.] Husband testified before Master Frankel that he had purchased the Ford F-150 about three years before the 2011 hearing, which would have been in 2008. The parties separated in 2006 so there is no question the truck was purchased after the parties separated. It is less clear whether marital assets were used to purchase the truck, since Husband testified that he received $4,000 in 'trade in' money from a 1984 Ford Ranger at the time of the purchase.

Trial Ct. Op. 12.

On appeal, Husband echoes the court's observation that it is not clear whether he purchased the F-150 truck with marital assets. Husband does not deny or concede that he used "trade in" money for the other vehicle to purchase this vehicle, and on appeal, maintains only that "the record is silent as to whether" he borrowed funds to acquire the F-150 truck. **See**

- 34 -

Husband's Brief at 14. Husband instead places the burden upon Wife to establish whether he purchased the truck with marital assets. However, pursuant to **Perlberger**, a decision cited by Husband, "[t]he presumption of marital property is rebuttable, and property may be established as separate by a preponderance of the evidence." **See Perlberger**, 626 A.2d at 1196. Husband did not establish before the trial court, nor this Court, that the F-150 truck should not be marital property. **See id.** Accordingly, we do not disturb the trial court's designation of the truck as marital property.

Husband's second issue concerns the court's calculation of his pension payments. Husband first maintains: (1) since separation Husband has received his pension payments without paying any to Wife, due to "the numerous appeals and assignments of error" throughout "the procedural history of this case;" and (2) he "has paid all Federal, State, and local taxes associated with his receipt of 100% of the pension benefits;" and (3) he has paid "all applicable taxes on Wife's award, an outcome which is quite inequitable," as Wife "accrue[s his] pension benefits essentially 'tax free.'" Husband's Brief at 16, 19. Husband reasons the court "failed to consider the tax consequences" as required by Section 3502(a)(10.1), and that "[a] more equitable approach is simply to award Wife the net portion of her award after taxes." **Id.** at 18-19.

The trial court essentially found this issue waived.

> . . . Pennsylvania Rule of Civil Procedure 1920.55-2(b),
> which states in relevant part that "[m]atters not covered

> by exceptions [to the master's report and recommendation] are deemed waived." As our Court has previously explained, "[t]his rule requires a party who is dissatisfied with a master's report to file exceptions to the report, or waive any such objections."

*Lawson v. Lawson*, 940 A.2d 444, 450 (Pa. Super. 2007).

The trial court noted the following. Both Master Frankel's and Master Shucker's recommendations concerning both parties' pensions were based on gross figures. While both parties filed exceptions to both recommendations, neither "objected to the use of gross figures in these calculations." Trial Ct. Op. at 13. The court did not address this issue in its 2012 decision because "the parties did not raise" it. *Id.* Husband's argument wholly ignores this reasoning and does not deny that he did not raise an exception. Our review of Husband's December 28, 2012 exceptions confirms that he did not raise any tax argument. Accordingly, we hold he waived this issue before the trial court. *See Lawson*, 940 A.2d at 450.

In considering Husband's final issue, we first reiterate that the trial court included in the marital estate his post-separation contributions to his pension—those made for 3.3 years from the date of separation to his retirement from the Reading Police Department. *See* Decree at 7. Husband argues there was no evidence at the master's hearing as to the amount he contributed to his pension either before or after separation, and "[n]o

questions on this topic were posed to" him.[23]  Husband's Brief at 20-21.  We

disagree.

Section 3501(c)(1) provides:

**(c)  Defined benefit retirement plans.—** . . .

(1) In the case of the marital portion of a defined benefit retirement plan being distributed by means of a **deferred distribution**, the defined benefit plan shall be allocated between its marital and nonmarital portions solely by use of a coverture fraction.  The denominator of the coverture fraction shall be the number of months the employee spouse worked to earn the total benefit and the numerator shall be the number of such months during which the parties were married and not finally separated.  The benefit to which the coverture fraction is applied shall include all postseparation enhancements except for enhancements arising from postseparation monetary contributions made by the employee spouse, including the gain or loss on such contributions.

(2) In the case of the marital portion of a defined benefit retirement plan being distributed by means of an **immediate offset**, the defined benefit plan shall be allocated between its marital and nonmarital portions solely by use of a coverture fraction.  The denominator of the coverture fraction shall be the number of months

---

[23] In support, Husband cites the court's own observation that "the parties declined or were unable to provide the amount of Husband's current pension that is attributed solely to his . . . post separation contributions for the 3.3 years between the date of separation and Husband's retirement."  Husband's Brief at 21 (citing Decree at 6).  We find Husband has misquoted and thus misinterpreted the trial court's statement.  What the trial court stated was, "The parties declined or were unable to provide . . . **the increase in value of his pension due to his post-separation contributions** for the 3.3 years between the date of separation and Husband's retirement."  Decree at 6 (emphasis added).  These are two distinct figures: the amount of money contributed to his pension and the effect, or increase in total value of the pension, of those contributions.

the employee spouse worked to earn the accrued benefit as of a date as close to the time of trial as reasonably possible and the numerator shall be the number of such months during which the parties were married and not finally separated. The benefit to which the coverture fraction is applied shall include all postseparation enhancements up to a date as close to the time of trial as reasonably possible except for enhancements arising from postseparation monetary contributions made by the employee spouse, including the gain or loss on such contributions.

23 Pa.C.S. § 3501(c)(1)-(2) (emphases added).

The trial court relied on the following statement in **Smith**, 938 A.2d

246:

While [Section 3501(c)] does not address, specifically, defined benefit plans involving regular and mandatory deductions from each paycheck, to the extent the same amount is deducted after separation as was deducted before, we do not believe that any additional enhancement that occurs post-separation can be deemed to "arise" from the postseparation payroll deductions so as to trigger the exclusionary language of § 3501(c)(1). Instead, we view regular payroll deductions as part and parcel of "the continued employment of the worker" as discussed in [**Holland v. Holland**, 588 A.2d 58, 60 (Pa. Super. 1991).] To decide otherwise would create the untenable result that the same postseparation enhancement would be included in marital property if the enhancement occurred in a pension without payroll deductions, but excluded in pensions with payroll deductions.

**Smith**, 938 A.2d at 259.

The court addressed Husband's claim "that there was no evidence that post separation deductions were the 'same amount' as is pre-separation payroll deductions." Trial Ct. Op. at 14. The court reasoned, however:

> While this may be true, there was also no evidence that any post-separation contributions by Husband . . . . were **not** the same amount as before so as to trigger the exclusion from the marital estate. Section 3501 casts a broad net, indicating that all postseparation enhancements shall be included in the marital estate except for [those] which have been held **not** to include regular payroll deductions made in the ordinary course. *See* 23 Pa.C.S.A. § 3501(c); *Smith*[, 938 A.2d at 249.] Absent evidence that Husband made postseparation contributions to his Reading Police Pension in excess of any regular payroll deductions taken out in due course, it was not error for this court to include as marital property any portion of Husband's Pension Benefit attributable to or arising from such contributions.

Trial Ct. Op. at 14.

On appeal, Husband continues to argue, without acknowledging the trial court's response to this claim, that there was no evidence as to the amount he contributed to his pension post separation. Husband likewise fails to address the court's observation that there was no evidence that his contributions exceeded "regular payroll deductions." *See id.* We find no merit to Husband's claim and affirm the decision of the trial court.

Finally, we note Wife has filed with this Court an objection to Husband's reply brief to her Appellant's brief. Wife requests this Court to dismiss and/or refuse to consider Husband's reply brief. We deny this request.

Wife's request to dismiss Husband's reply brief denied. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2015